## DAVID W. MOORE ADS. SAMUEL TOWNSHEND.

1. An action on the case in the nature of waste, will lie against a tenant for years, for permissive waste.

2. An action on the case in the nature of waste, is an action founded on the act for the prevention of waste, (*Nix. Dig.*, 4th ed., 1022,) which is substantially the same as the statutes of Marlbridge and Gloucester, and may be maintained, although the act complained of might be the subject of an action for the breach of an express covenant contained in the instrument of demise, or of a promise implied by law on which an action, *ex contractu*, might be maintained.

3. A lease of a glass manufactory, and of the tools and moulds connected therewith, contained a covenant by the tenant to return the said tools and moulds to the landlord, at the expiration of the term, in as good order as they were in at the time of the demise, reasonable wear and tear, and fire excepted; and, also, an agreement by the landlord, that the tenant should have the privilege of expending one hundred dollars *per year* in repairs on said property, deducting the same from the rent: *held*, that the terms of the lease neither limited the duties of the tenant in the matter of repairs, nor excused permissive waste arising from his suffering the premises to decay for want of necessary repairs.

---

On rule to show cause, &c.

This was an action on the case in the nature of waste, to recover damages for permissive waste, tried at the Cumberland Circuit. The plaintiff, on the 5th of November, 1853, by a lease, under seal, demised to the defendant the premises

known as The Eagle Glass Works, in the county of Cumberland, together with one hundred and fifty moulds, and all the tools of every description connected with the glass manufactory business at that manufactory; to hold for the term of two years and eight months, at a yearly rent of one thousand dollars. The lease contained a covenant, by the tenant, for the re-delivery of the moulds and tools to the lessor, at the expiration of the term, in as good condition as they were in at the time of the demise, reasonable wear and tear and fire excepted. It also contained the following clause: "It being understood and agreed between the said parties that said Moore has the privilege of laying out one hundred dollars per year in repairs on said property, and deducting the same from the rent." There was no other covenant in the lease on the subject of repairs. It was shown, at the trial, that twenty-one dollars and fifty cents had been expended in repairs during the continuance of the lease, of which sum six dollars and ninety-five cents had been deducted from the rent, the balance of which had been paid.

The jury found a verdict for the plaintiff, and assessed his damages at five hundred and fifty dollars.

A rule to show cause why a new trial should not be granted, was allowed; and the following reasons were assigned for setting aside the verdict. 1. Because an action on the case will not lie against a tenant, for years for permissive waste. 2. Because the lease between the parties measures and limits the liability of the tenant, in the matter of repairs.

Argued at November Term, 1868, before the CHIEF JUSTICE, and Justices DALRIMPLE and DEPUE.

For the rule, *J. T. Nixon.*

This is an action on the case for damages to real estate, leased by defendant of plaintiff.

The damages charged in the declaration are, for permitting the leased premises to run to decay.

This offence is known in law as *permissive* waste; suffering the property to run to decay by lapse of time, as distinguished from *voluntary* or *actual* waste, which implies a willful destruction by the tenant or his servants.

In this case an estate is created by the act of the parties.

Now at *common law*, no prohibition against waste, lay against lessee for life or years. 4 *Kent's Com.* 78.

Only such tenants were punishable for waste, as claimed by operation of law, as guardians, tenants by curtesy, tenant in dower, &c. 1 *Coke Litt.*, § 67, 54 *a*; 2 *Bl. Com.* 282; *Taylor L. & T.*, § 686.

Lessor has no remedy against lessee for waste unless he bound him by covenant not to commit. In Coke's terse words: "He that might and would not provide for himself, the common law would not provide for."

This defect of the common law was sought to be remedied.

1. By *Stat. of Marlbridge*, 53 *Hen.* 111, *ch.* 23, substantially the same as section two of our statute of "waste." *Nix. Dig.* 1022.

2. By *Stat. of Gloucester*, 6 *Ed.* 1, *ch.* 5, from which our section three, "waste," is copied. *Nix. Dig.* 1022.

It is insisted, that these statutes only apply to *willful* or *voluntary* waste, and not to *permissive*. 1 *Chit. Gen. Pr.* 387; 1 *Co. Litt.* 57 *a*.

I. An action on the case will not lie for *permissive* waste. *Countess of Shrewsbury's Case*, 5 *Coke* 14; *Ch. J. Hale M. S. S.* as quoted in *Hargs. note to Co. Litt.* 57 *a*, note 377; 1 *Chit. Pr.* 390; *Gibson* v. *Wells*, 4 *Bos. & Pul.* 290; *Herne* v. *Bembow*, 4 *Taunt.* 764; *Jones* v. *Hill*, 7 *Taunt.* 392, *note*; *Martin* v. *Gilham*, 7 *Adolph. & El.* 540; *Eng. L. & E. Rep.*, vol. 27, *p.* 571.

No American decision on this point known; but American text books follow the English cases. 2 *Hill. on Torts, p.* 303; *Taylor L. & T.*, § 688, 689; *Serg. Williams' notes*, 1 *Wm. Saunder's R.* 323 *b*, *note* 7, and 2 *Saund.* 252 *a*, *note* 7, suggest

a different rule; but later additions of this work overrule him. 1 *Saund*. 323, *notes i and k;* 2 *Saund*. 252 *a*, 7 *b*.

II. But, if this position be not tenable, under the peculiar language of our statute, in the present case, the lease offered and proved by plaintiff, measures and limits the responsibility of the tenant.

The estate is created by the act of the parties; plaintiff could make his own terms, and require what covenants he pleased.

Defendant covenanted to deliver up a part of the leased property, specifically named, in as good order as when he received it, reasonable wear and tear and fire excepted. He made no covenant as to the residue, and this suit is brought to recover damages for *permissive* waste to that.

Is it not plainly to be inferred, that the parties did not mean that defendant should be liable for *permissive* waste?

Again. It was agreed between them that defendant had the privilege of withholding from the rent one hundred dollars annually, and expending that sum upon the property. He did not choose to retain that sum, but paid it over every year to plaintiff, who received it without complaint, that it should be expended in keeping the property in repair.

Was not that the sum which the parties agreed should be annually expended in keeping the property in repair, and has not the plaintiff waived all claim for damages by putting the same in his pocket, rather than expending it upon the property?

Against the rule, *F. F. Westcott.*

The defendant seeks to set aside the verdict rendered in this case for the following reasons:

1. Because a landlord cannot maintain an action on the case against his tenant for permissive waste.

2. Because the lease between the parties, offered in evi-

dence by the plaintiff, measures and limits the responsibility of the tenant in the matter of repairs. ·

Under the first of these reasons, the counsel for the defendant, upon a motion made at the circuit to non-suit the plaintiff, contended, 1st, that, as the foundation for the action, if any at all existed, lay in the promise of the defendant, implied by the law from his character as tenant to make tenantable· repairs, the action was improperly framed in case, and should have been brought in *assumpsit.*

It is supposed that either form of action could have been sustained, but case is certainly the more proper form, being founded upon the *breach of duty* cast upon the tenant by the relation assumed. *Comyn Land & Ten.* 188, 194 ; 1 *Saund. Pl. & Ev.* (title case, action on the) 726 ; *Burnett* v. *Lynch,* 5 *B. & C.* 609 ; *Black. Com., Shars. ed.* 3, 227, *note ; Kent's Com.* 4, 81.

This conclusion leads us to consider the broader doctrine contended for at the circuit by the counsel for defendant, viz., that *no action of any form whatsoever* will lie against tenant for years for waste unless restrained by the provisions of his lease. ·

It has been laid down by great authority, *Coke Inst.* 2, 299, that an action for waste did not lie against such tenant, prior to the enactment of the statutes of Marlbridge and Gloucester, but this doctrine is presented by *Bacon's Abridgment, title Waste,* a *note, quoting Bracton Zib.* 4 *ch.* 18, and is emphatically denied by Reeves in his history of *Eng. Law, vol.* 2, 73, 74, 148, *note,* according to whose views these statutes were merely declaratory of the common law.

However this may have been, the statutes of Marlbridge, 52 *Henry* 3, *ch.* 24, and Gloucester, 6 *Edward* 1, *ch.* 5, enacted that farmers, during their terms, should do no waste, and provided remedies for their breach.   It has been contended that the words *do no waste* in the statute of Marlbridge, extend only to commissive, and do not include permissive waste.   But the authorities do not support this position. *Bacon's Abridgment, title Waste,* 7, 250, *notes a and b ;*

*Coke's Inst., title Tenant for Years,* 1, 53, *a,* and from the time of the enactment of those statutes permissive waste, by tenant for years, has been actionable, and case in the nature of waste has long been the approved form of remedy. *Comyn's Dig., vol.* 7, *title Waste,* 514, *ch.* 1 ; *Ib.* 519, 520; *Bacon's Abridgment, vol.* 7, *title Waste,* 250, *a ; Ib.* 256 ; *Viner's Abridgment, vol.* 22, *title Waste,* 440 ; *Petersdorf's Abridgment, title Waste,* 379, *note; Ib.* 383 ; *Black. Com.* 2, 283 ; *Kent's Com.* 4, 81 ; *Archbold on Land. and Tenant* 197 ; *Ib.* 68 ; *Comyn on Land. and Tenant* 188–194 ; *Washburne's Real Prop.* 1, 115, 29 ; *Ib.* 117, 39 ; *Ib.* 123, 58, *note; Greene* v. *Cole,* 2 *Saund. Rep.* 252, *and note; Harnett* v. *Maitland,* 16 *M. & W.* 256 ; *Sackett* v. *Sackett,* 8 *Pick.* 309.

If any question could have arisen, under the phraseology of the statute of Marlbridge, whether that statute extended to permissive waste, there is no ambiguity in the statute of New Jersey, which is a substantial re-enactment of the statutes of Marlbridge and Gloucester, (*Nix. Dig.* 868, § 2,) for this expressly prohibits permissive as well as commissive waste.

It is submitted that no case can be found in the books establishing the doctrine contended for by the defendant; all the cases cited by him which give color to such a proposition, *Anworth* v. *Johnson,* 5 *Carr. & Payne* 239 ; *Torriano* v. *Young,* 6 *Carr. & Payne* 253 ; *Countess of Shrewsbury's Case,* 5 *Coke* 14 ; *Gibson* v. *Wells,* 1 *New Rep.* 290, will be found, upon examination, to have been cases either of tenancy from year to year or at will, to neither of which the statute of Marlbridge extended, and so are distinguishable from the present case. *Herne* v. *Bembow,* 4 *Taunt.* 764, is a mere *dictum :* whether or not an action would lie for permissive waste was not the question before the court judicially to decide, and the case cited in support of the *dictum, Countess of Shrewsbury's Case,* 5 *Coke* 14, would not sustain it, that being a case of tenancy at will. There is a reason why tenant for years should be liable for permissive waste which

does not apply to tenants from year to year, and at will; if a tenant from year to year, or at will, suffers waste to occur, the landlord can promptly determine the tenancy, and protect himself; but a tenant for years may have it in his power to ruin the landlord before the expiration of his term; the statute of Marlbridge was doubtless founded upon this distinction, as well as upon public policy. In *Jones* v. *Hill,* 7 *Taunt.* 391, cited by defendant's counsel, the court expressly refused to decide whether or not an action would lie for permissive waste. In the other class of cases quoted by defendant's counsel, of which *Gutteridge* v. *Munnyard*, 7 *Carr. & P.* 129, is a type, the liability of the tenant is controlled by his covenants, and such cases are not pertinent when the question is, as now, upon the tenant's *liabiliy at common law*.

II. The second reason assigned is, that the lease, by its terms, limits the responsibility of the tenant in the matter of repairs.

This reason admits the common law duty of the tenant to make repairs, but maintains that this duty has been modified by agreement of the parties.

The question then arises, what kind of an agreement does the law make necessary in order to shift the burthen of making repairs from the tenant to the landlord?

The authorities say it must be an express covenant, and no such covenant can be found in the lease. *Comyn on Land. and Tenant* 185; *Taylor on Land. and Tenant*, §§ 327–328; *Archbold on Land. and Tenant* 67.

The only provision in the lease which can give any color to the proposition of the defendant, is the following:

"It being understood and agreed between the parties, that said Moore has the privilege of laying out one hundred dollars per year in repairs on the property, and deducting the same from the rent."

But this is no covenant that the landlord will use the one hundred dollars in making repairs if the tenant fails to do

so; it is a *privilege* that the tenant may avail himself of, if he will. And the fact that the tenant, instead of using the one hundred dollars in making repairs, paid it over to the landlord, does not release the tenant from his liability; the one hundred dollars in the lease, which the tenant had the right to use in making repairs, bears a strong, if not a perfect, analogy to timber upon demised premises, which, by the common law, the tenant had a right to cut and use in repairs. *Taylor on Land. and Tenant*, § 351, 352.

But if the tenant, having such means for repairs, failed to use them, whereby the premises fell into decay, it was no defence, in an action brought against him by the landlord for the permissive waste, that the landlord had not entered upon the premises, and himself used the timber in making repairs. This was the tenant's *privilege*, but not the landlord's *duty*. The value of the timber remaining uncut upon the premises would be no compensation for the waste which the use of the timber would have prevented.

On the same side, *Mr. Browning*.

Two points are presented to the court upon this motion, by the defendant.

1st. That an action on the case will not lie, by a landlord against his tenant, for years for permissive waste; and,

2d. That if it will lie, it cannot be maintained in this case, because the lease fixes and limits the tenant's liability for repairs.

On the part of the plaintiff, we propose to show,

I. That case will lie, by a landlord against his tenant, for years for permissive waste.

The *lessor* of a house, for life, or years, or from year to year, is not bound to repair, without an agreement to that effect; but the *lessee*, who has the use of it, ought to do so; and from his duty to repair, the law implies a promise, by him, to do so. This duty did not exist at common law, but is, by the *Statute of Gloucester, 6th Edw. 1st, ch.* 5, which extends

to permissive as well as to voluntary waste.   *Arch. L. & T.* 189.

Our statute on waste expressly includes permissive.   *Nix. Dig., title Waste, p.* 907, and expresses the construction to English acts.

Blackstone says, that for five hundred years past, tenants, merely for life, or *for any lesser estate,* have been punishable or liable to be impeached for waste, both voluntary *and permissive,* unless their leases be made, as they sometimes are, without impeachment for waste.   2 *Com.* 283.   To the same effect is, 1 *Wash. on R. E.* 117, 39, 116.

Baron Comyn says : " By the very relation of landlord and tenant, the law imposes on the lessee the obligation to treat the premises demised in such a manner, that the estate may revert to the lessor, undeteriorated by the willful or *negligent* conduct of the lessee.   These duties fall upon him without any express covenant on his part, and a breach of them will, in general, render him liable to be punished for waste."   And " that permissive waste to buildings consists in omitting to keep them in tenantable repair."   *Com. on L. & T.* 188, 194.

And Lord Coke says : " It will be waste, although there be no timber on the land demised for repairs."   *Co. Litt.* 53, *a ; Arch. L. & T.* 199; *Smith L. & T.* 196; *Dane's Ab.* 214, 239; *Green* v. *Cole,* 2 *Saund.* 252.

A willful omission of a duty is, in morals and often in effect, tantamount to a willful commission of a wrongful act.

The remedy for waste is an action on the case to recover single damages, and this, whether the tenant be under covenant to repair or not.   *Arch. L. & T.* 197; *Kinleyside* v. *Thornton,* 2 *Wm. Bla.* 1111.

In the case of *Burnett* v. *Lynch,* Littledale, J., said : " Case affords a most extensive remedy for all breaches of duty, *ex quasi contractu ;* and when, from a given state of facts, the law raises an obligation to do a particular act, and there is a breach of that obligation and a consequential damage, an

action on the case founded on *tort* is the proper form. *Burnett* v. *Lynch*, 5 *B. & C.* 609; *Saund. Pl. & Ex.* 726.

Sergeant Williams, in *Green* v. *Cole*, discusses the whole subject with his known accuracy, and shows most conclusively, that *case* is the proper form of action. 2 *Saund.* 252, *note* 7.

The cases referred to by defendant are not in harmony with sound principle, and for the most part *nisi prius* or not well considered cases, or cases of tenants at will.

II. There is nothing in the lease which limits or prevents this action.

The provision in the lease is simply to the effect that the lessor will contribute one hundred dollars a year towards repairs on the property; and that for such purpose the lessee may retain that amount out of the property.

1. The language of the provision is this, immediately following the covenant to pay rent, viz.:

" It being understood and agreed between the said parties, that said Moore has the privilege of laying out one hundred dollars a year in repairs on said property, and deducting the same from the rent."

Although somewhat awkwardly expressed, the obvious meaning is this, *that said Moore have the privilege of retaining one hundred dollars a year out of the rent towards repairs.*

The " privilege " granted was, to *retain the money out of the rent;* not to *lay it out in repairs.*

It did not mean that lessee was under obligation to expend one hundred dollars in repairs, for it was proved and admitted on all hands, that when this property was leased it was out of repair, and could not be put in operation without an expenditure of from one thousand dollars to twelve hundred dollars; and that after that the repairs of each year in rebuilding furnaces, &c., would cost about five hundred dollars.

While the one hundred dollars a year would only be two

hundred and eighty dollars for the whole term, the repairs and necessary expenses would be twenty-five hundred dollars.

It was a *privilege* to allow the money to be kept out of the rent; but to apply the term to the expenditure is an absurdity.

It was an instigation of the duty to repair, that the privilege was granted.

2. A tenant can only be released from his duty to repair by express agreement to that effect.

A tenant from year to year or for years, is bound to keep the premises in repair, whether there is such a stipulation in the lease or not. *Long* v. *Fitzsimmons*, 1 *W. & S.* 530; *Colby* v. *Straton*, 6 *B. & C.* 273.

This duty is incident to the relation. *Com. L. & T.* 188.

And from this obligation he can be relieved by an *express* covenant only on the part of the landlord. *Com. L. & T.* 185; *Taylor L. & T.* 208, § 327; *Arch. L. & T.* 67.

The landlord has no right to enter on the premises, during the term, to make repairs or for any other purpose, except to distrain for rent in arrear, without express agreement. He would be a trespasser.

The lease for the term is a sale for the time, and carries absolute possession.

There is no express covenant in this lease, and nothing tantamount to it.

In reply, Attorney-General, *George M. Robeson.*

The verdict is wrong because no action *on the case for tort* will lie for *permissive waste*, against the tenant for *years*.

*First.* The action of waste would lie, at common law, only in the case of tenancies created by the operation of law, (tenants in dower, curtesy, guardians, &c.)

The action was confined to tenancies thus created, and was not given where the tenancy arose out of contract, and this was upon the express ground, that the parties to a contract provided for the protection of the reversion created by it.

The action of waste was given by the law, as a protection to the estates which the law created, as a remedy against acts by the tenant in possession, which would have been *trespass had he not been in possession.*

*Voluntary or affirmative* waste, consisting of some *affirmative injurious act,* which would amount to a trespass in a person not in possession, is undoubtedly a *tort;* it is an affirmative attack upon the estate in reversion, the estate of another, by a person not interested in it. But *permissive* waste is not a direct attack upon the reversion by a stranger to it; it is a decrease in the value of the reversion by reason merely of the failure to perform some duty as tenant of the particular estate, which duty is the tenant's under an implied obligation to perform it in relation to *his own estate,* for the benefit of the reversionary estate of another.

*Second.* By the statutes of Marlbridge and Gloucester, the action of waste was extended so as to apply to *tenancies for years.*

But these statutes treating of waste only as a *tort* to be punished, apply only to cases of *voluntary* or *affirmative waste. Taylor's L. & T.* 500, 502, 688, 690; 2 *Hilliard on Torts* 303; 1 *Chitty's Gen. Prac.* 387, 88; *Countess of Shrewsbury's Case,* 3 *Rep.* 14; *Herne* v. *Bembow,* 4 *Taunt.* 764; *Gibson* v. *Wells,* 4 *B. & P.* 290; *Horsful* v. *Mather,* 1 *Holt N. P.* 67, 3 ed. 83; *Torriano* v. *Young,* 6 *C. & P.* 8.

It was natural and consistent that the remedy should be given by statute against the *tenant for years* for *voluntary* or *or affirmative waste.*

This was the doing by the tenant of some affirmative wrong act outside of the contract of tenancy, which in its nature was not included in or dependent upon it; an act which would have been just as much a *tort* if done by a stranger as when done by the tenant, and which does not depend for its character as a wrong on his relation as tenant, but for which it was necessary to provide a remedy against the tenant in possession, as an action of trespass would not lie against him.

Thus an action on the case for *tort* will lie against the *tenants for years* for *voluntary* waste, a wrong act independent of his contract of tenancy.

But such is not the case in relation to *permissive waste* by the *tenant for years*. This must arise, if it will lie at all, out of the failure of obligations which he is under, if not by the contract directly, at least by reason of the relation in which he stands, under and by virtue of his contract.

Any remedy for the failure to perform such contract obligations, if any such exist, must be an *action ex contractu*.

This construction of the effect of the statutes of Gloucester and Marlbridge, is sustained not only by the reasoning in relation to the different nature of the two kinds of waste, but also by an examination of the affirmative language, and punitive provisions of the statutes themselves, and by the authoritative construction of the authorities above referred to.

The contrary view is entirely founded on the notes of Mr. Williams to the cases of *Pomfret* v. *Ricroft*, 1 *Saund.* 323, *b.* *N.* 7, and *Green* v. *Cole*, 2 *Saund.* 259, *note* 11, and the rulings which seem to follow them, will be found to be generally, if not invariably, mere *dicta* in cases where the decision did not depend upon it.

*Third.* But whatever may be thought of the question as to whether any action in the nature of permissive waste lies against the tenant for years, it seems clear that any such action must be an action of *assumpsit* and not *tort.*

A *tort* is a wrong and injury done to the person or property of another, which is a wrong by reason of the relations of the parties *as members of society ;* it is a violation of some general, political or social obligation, or the omission of some political or social duty.

An action for *tort* then will not lie for the breach of any obligation created by a man's own act, or the omission of any artificial duty which he takes upon himself in relation to anything.

All tenancies for years arise *out of contract*, and all the *affirmative duties* of the tenant *are those of a contractor;* the omission of such a duty is then an omission of a *contract* duty.

Voluntary waste by a tenant for years, is, as we have seen, an affirmative wrong act, outside of the contract, just as much a wrong without the contract as with it; a wrong which is so by reason of the tenant's general relations *as a man* to the property of another, and not by reason of his contract as tenant and which would have been equally a wrong if done by a stranger.

Permissive waste by a tenant for years, if anything, must be the omission of an affirmative obligation of the tenant; but his affirmative obligations grow out of, and are the result of his contract, and are imposed upon him as a contractor.

The failure to perform the obligations of a demise, whether express or implied, is not a *tort*, and the remedy must be *ex contractu*, not *ex delicto*.

*Fourth.* Our statute of waste, *Nix. Dig.* 907, does not give any remedy against the tenant for years for *permissive waste.*

The same reasons for its not doing so apply as were given against such a construction of the English statutes.

The second section of the act uses the language " make or suffer waste," and it may be argued that this is a special reference to permissive waste, but the word " suffer " will not bear that meaning.

To " suffer " is to be object of some active verb. Derived from " sub " and " fero," it means the enduring or suffering of some affirmative action, and its use in the statute, means merely the suffering or allowing some affirmative act of voluntary waste to be done by some other persons.

Again : the provisions for all the several kinds of tenancy, are crowded into the second section, which applies to *tenancies for life*, as well as *for years*, and as the statute does not assume to make that waste which was not waste before, the

fair construction is to confine the word "suffer," if it applies to permissive waste at all, to tenancies for life.

But the whole system and subsequent language of the statute shows that it refers only to voluntary waste.

Thus the seventh section provides that the tenant shall not be liable after he has assigned or underlet his estate.

The expression to " *do waste*," is the general term used all through the statute when it is desired to speak comprehensively of the thing therein provided against, and all the inquests provided for, are to inquire of the " waste done," and the punitive treble damages to be recovered for the " waste done" seem to contemplate a punishment for affirmative wrong act done or suffered, or voluntary waste.

Again : the very second section provides that for the waste therein contemplated as " made or *suffered*," the tenant may have " a license in writing, making mention that he *may do it*."

While all these things go to show that our statute, like the English, is intended to provide against " doing waste," the fact that although the statute has been in force since 1795, there has never before been an action brought for permissive waste against a tenant for years ; and the understanding universal in New Jersey, that, in the absence of any agreement to the contrary, the ordinary repairs (the neglect of which would make permissive waste) are to be done by the landlord, seem to be conclusive as a cotemporaneous and continuous construction of the statute.

*Fifth.* But the verdict is wrong for another reason, and even if the action would lie under ordinary circumstances—for

1. The tenancy in this case arises by deed between the parties, and the defendant's possession and estate, and all his duties and obligations grow out of the deed upon which his estate depends.

When one executes a deed and substitutes its requirements for the obligations of law, then all *idea* of *tort* is abandoned—all his affirmative duties are contract duties,

and all his omissions of affirmative duties are contract wrongs. *Coke Lit.* 54 *b; Jones* v. *Hill,* 7 *Taunt.* 396, *note.*

If the lease was entirely silent on the subject (though providing for other things), the proposition would be the same, for still the express contract is the measure of our obligation. It provides affirmatively *what we shall* do, and leaves out what *we need not do.*

It is different from a mere tenancy without express agreements of any kind. We are bound by our lease or not at all.

2. But this deed does provide for the subject of repairs.

There are two subjects of lease—one the real property the other the tools and the moulds—and with regard to the tools and moulds, there is an express provision that they are to be returned in good condition, &c.

This would be strong even if nothing was said about repairs to the property, for the provision in the deed in regard to repairs to one subject matter of the demise, would show that no repairs were contemplated in regard to the other subject matter.

But there is a direct provision in regard to repairs to the real property, fixing the limit of the defendant's obligation in regard to it.

The tools and moulds are to be returned in as good condition as they are delivered—the real property is to receive one hundred dollars per year, and this it is the *privilege* of the defendant to put on and to deduct from the rent, showing that it was considered the duty of the landlord to repair, but the tenant was to have the *privilege* of doing it in his own way and at his own convenience, but at the cost of the landlord.

There can be no action on the case for waste where the defendant holds under a deed providing for the very subject. *Taylor L. & T.* 245, *note; Smith L. & T.* 250 ; *Standen* v. *Chrismas,* 10 *A. & E.* 135, (59 *E. C. L.*)

This provision shows the idea of the parties in relation to

repairs—the amount they understood to be necessary, and provided who should pay it.

In its worst construction against us it must be construed to mean that we must repair, and may charge one hundred dollars per year of the necessary amount to the plaintiff. It may be that this clause implies that we were bound to repair, but if that be so, it is an *implication from the lease* and the action should be covenant or *assumpsit.*

DEPUE, J. The action on the case, in the nature of waste, has almost entirely superseded the common law action of waste, as well for permissive as for voluntary waste, as furnishing a more easy and expeditious remedy than a writ of waste. It is also an action encouraged by the courts, the recovery being confined to single damages, and not being accompanied by a forfeiture of the place wasted.

At common law, waste lay against a tenant in dower, tenant by the curtesy and guardian in chivalry, but not against lessees for life or years. 2 *Inst.* 299, 305; *Co. Litt.* 54. The reason of this diversity was, that the estates and interests of the former were created by the law, and therefore the law gave a remedy against them, but the latter came in by the act of the owner who might have provided in his demise against the doing of waste by his lessee, and if he did not, it was his negligence and default. 2 *Inst.* 299; *Doct. & Stu.*, ch. 1, *p.* 102. This doctrine was found extremely inconvenient, as tenants took advantage of the ignorance of their landlords, and committed acts of waste with impunity. To remedy this inconvenience the statute of Marlbridge (52 *Hen.* 3, *ch.* 23,) was passed. But as the recompense given by this statute was frequently inadequate to the loss sustained, the statute of Gloucester (6 *Edw.* 1, *ch.* 5,) increased the punishment by enacting that the place wasted should be recovered, together with treble damages. 1 *Cruise Dig.* 119, §§ 25, 26; *Sackett* v. *Sackett,* 8 *Pick.*, *p.* 313, per Parker, C J. The statute of Marlbridge is in the following words: "Also fermors, during their terms, shall not make, waste, sale, nor

exile of house, woods, and men, nor of anything belonging to the tenements that they have to ferm, without special license had by writing of covenant, making mention that they may do it; which thing, if they do and thereof be convict, they shall yield full damage, and shall be punished by amercement grievously." 2 *Inst.* 145. The word fermer (*firmarii*) in this statute comprehended all such as held by lease for life or lives, or for years, by deed or without deed. 2 *Inst.* 145, note 1, and also devisees for life or years. 2 *Roll. Abr.* 826, *l.* 35. By the statute of Gloucester, " it is provided, also, that a man, from henceforth, shall have a writ of waste, in the Chancery, against him that holdeth by law of England or otherwise, for term of life, or for term of years, or a woman in dower. And he which shall be attainted of waste, shall leese the thing that he hath wasted, and, moreover, shall recompence thrice so much as the waste shall be taxed at: And for waste made in the time of wardship, it shall be done as is contained in the great charter." 2 *Inst.* 299. At the common law, a tenant at will was punishable for voluntary waste, but not for permissive waste. *Countess of Salop* v. *Crompton, Cro. Eliz.* 777, 784. The Countess of Shrewsbury's case, 5 *Rep.* 14; *Harnett and Wife* v. *Maitland,* 16 *M.* & *W.* 258. Tenants in dower, by the curtesy, for life or lives, and for years, were included in the statute of Gloucester. Tenants at will were always considered as omitted from the statute of Marlbridge as well as from the statute of Gloucester, and, therefore, continued to be dis-punishable for mere permissive waste, and punishable for voluntary waste by action of trespass as at common law. The reason of this exemption of tenants at will from liability for permissive waste, was the uncertain nature of their tenure which would make it a hardship to compel them to go to any expense for repairs. Their exemption from the highly remedial process of waste provided by the statute of Gloucester, is attributable to the fact that the owner of the inheritance might at any time, by entry,

determine the estate of the tenant, and thus protect the inheritance from spoil or destruction.

The language of the statute of Marlbridge is, "shall not make (*non facient*) waste," and in the statute of Gloucester, in speaking of guardians, the words used are, "he which did waste" (*que avera fait waste*). The settled construction of these statutes in the English law until a comparatively recent period was, that they included permissive waste as well as voluntary waste. In a note in exposition of the statute of Marlbridge, Lord Coke, in commenting on the words "*non facient*," says : " To do or make waste, in legal understanding in this place, includes as well permissive waste, which is waste by reason of omission or not doing as for want of reparation, as waste by reason of commission, as to cut down timber, trees, or prostrate houses, or the like ; and the same word hath the statute of Gloucester, *ch.* 5, *que aver fait waste,* and yet is understood as well of passive as active waste, for he that suffereth a house to decay which he ought to repair, doth the waste." 2 *Inst.* 145 ; 7 *Bac. Abr.* 250 ; 3 *Bl. Com.* 225 ; 2 *Saund.* 252 ; 4 *Kent* 76. So under the prohibition to do waste, the tenant is held to be bounden for the waste of a stranger, though he assented not to the doing of waste. *Doct. & Stu., ch.* 4, *p.* 113 ; 2 *Inst.* 303 ; *Fay* v. *Brewer,* 3 *Pick.* 203 ; 1 *Washburn R. Prop.* 116. It is common learning that every lessee of land, whether for life or years, is liable in an action of waste to his lessor, for all waste done on the land in lease by whomsoever it may be committed, per Heath, J., in *Attersoll* v. *Stevens,* 1 *Taunt.* 198 ; with the exception of the acts of God, public enemies, and the acts of the lessor himself. *White* v. *Wagner,* 4 *Harr. & Johns.* 373 ; 4 *Kent* 77 ; *Heydon and Smith's Case,* 13 *Coke* 69. The instances in the earlier reports in which lessees for life or years, were held liable for permissive waste, which consisted in injuries resulting from acts of negligence or omission, are quite frequent ; and their liability is grounded, not on the covenants or agreements in the instrument of demise, but on the statute,

which subjected them to the action of waste. *Griffith's Case*, *Moore* 69, *No.* 187; *Ib.* 62, *No.* 173; *Ib.* 73, *No.* 200; *Keilway* 206; *Darcy* v. *Askwith*, *Hobart* 234; *Glover* v. *Pipe*, *Owen* 92; 3 *Dyer* 281; 2 *Roll. Abr.* 816, *l.* 40; 22 *Vin. Abr. Waste* " *c* " *and* " *d*," *pp.* 436–440, 443; *Co. Litt.* 52 *a*, 53 *b*; 5 *Com. Dig. Waste, d* 2, *d* 4; *Bissett on Estates* 299, 300. So uniformly had the courts determined that lessees for life or years, had committed waste by the application of the common law rules with respect to waste, whether of omission or commission, that the learned commentator on English law says, " that for above five hundred years past, all tenants merely for life, or for any less estate, have been punishable or liable to be impeached for waste, both voluntary and permissive; unless their leases be made as sometimes they are, without impeachment of waste." 2 *Bl. Com.* 283.

This construction of the statutes of Marlbridge and Gloucester continued to be received without dissent until the decision of the case of *Gibson* v. *Wells*, 4 *B. & P.* 290, in the year 1805, which was followed by the case of *Herne* v. *Bembow*, 4 *Taunt.* 764, (1813.) These cases it is insisted have settled the construction against the liability of a tenant for years for permissive waste. *Gibson* v. *Wells*, is not an authority for this position. The tenant against whom the action there was brought was a tenant at will, who is not included within the statutes, and who, at common law, was punishable for voluntary, but not for permissive waste. In *Herne* v. *Bembow*, it does not clearly appear that the lease was for a term. It is certain that the opinion of the court, proceeded upon the principles applicable to tenants at will. As the case is reported in Taunton, it appears to have been decided, without argument or consideration. The opinion is a *per curiam* opinion, and the only case cited is the *Countess of Shrewsbury's Case*, 5 *Co* 14, which was a case of a tenancy at will.

The only subsequent case which sustains these cases is *Torriano* v. *Young*, 6 *C. & P.* 8; a case at *nisi prius*. In other cases where *Herne* v. *Bembow* was cited, the English

Courts show no disposition to follow it. In *Jones* v. *Hill*, 7 *Taunt.* 392, Gibbs, C. J., expressly guards himself against being supposed to concur in the position that an action will not lie against a lessee for years for permissive waste. In *Martin* v. *Gilham*, 7 *A. & E.* 540, and in *Beale* v. *Sanders*, 3 *Bing. N. C.* 850, a decision of that question is avoided; and in *Harnett* v. *Maitland*, 16 *M. & W.* 256, 261, Parke, B., on *Gibson* v. *Wells*, *Herne* v. *Bembow*, and *Torriano* v. *Young*, being cited, intimates an opinion against those cases as necessarily involving the result that a tenant for life is also dispunishable for permissive waste. Text writers of acknowledged authority have not recognized these cases as settling the law against the older cases and the opinions of Coke and Blackstone, but have regarded them as merely throwing a doubt upon a principle that had previously been set at rest. 2 *Saund.* 252 *b*, note *i*; *Arch. L. & T.* 196, 7; *Smith on L. & T.* 196; *Comyn on L. & T.* 495, and note *e*; 2 *Bouvier's Law Dict.* 645, *Waste*, § 14; 1 *Washburn on R. Prop.* 124, and note 1. By other legal writers they are doubted or condemned as unsound in principle. *Roscoe on Real Actions* 385; *Ferrard on Fixtures* 278, 281, note; 1 *Evans' Statutes* 193, note; *Broom on Parties* 257; 4 *Kent* 76, 79; *Elmes on Dilapidations* 257.

Independent of authority, the true construction of the statute of Gloucester, leads to the conclusion that tenant for life or years, was made liable for permissive as well as voluntary waste. Before either this act or the statute of Marlbridge was passed, waste was recognized in the law, as an injury to the inheritance, resulting either from acts of commission or of omission. Neither of these statutes created new kinds of waste, but gave a new remedy for old wastes, leaving what was waste, and what not, to be determined by the common law. 2 *Inst.* 300; and by the statute of Gloucester the writ of waste was suable out of Chancery as well against lessee for life or years, as against tenant by the curtesy, or in dower, putting the former, as to the newly created remedy, on the same footing as the latter. "It hath been used as an ancient maxim in the law, that tenant by

the curtesy, and the tenant in dower, should take the land with this charge, that is to say, that they should do no waste themselves, nor suffer none to be done ; and when an action of waste was given after, against a tenant for term of life, then he was taken to be in the same case, as to the point of waste, as tenant by the curtesy and tenant in dower was, that is to say, that he should do no waste, nor suffer none to be done." *Doct. & Stu.*, ch. 4, p. 113.   No distinction can be made between lessee for life and lessee for years.   Both are mentioned in the statute conjointly ; and each derives his interest in the premises from the act of the owner of the inheritance.

The second section of the act for the prevention of waste, which is in force in this state (*Nix. Dig.*, 4th ed., 1022,) provides that no tenant for life or years, or for any other term, shall during the term *make* or *suffer* any waste, sale or destruction of houses, gardens, orchards, lands, or woods, or anything belonging to the tenements demised, without special license in writing, making mention that he may do it.   The third section is in substance the same as the statute of Gloucester.   The act was passed in 1795.   The use of the words "*make or suffer*," in the second section, which are equivalent to Coke's interpretation of *facient* in the statute of Marlbridge, manifests an intent to adopt as the law of this state, the doctrine of the English courts, as to the liability of tenants for life or years for permissive waste, which was universally received at the time of the passage of the act.

The second reason assigned involves the effect of the lease in this action.

Premising that the act or omission, to constitute waste, must be either an invasion of the lord's property, or at least be some act or neglect which tends, materially, to deteriorate the tenement, or to destroy the evidence of its identity ; (*Burton's Comp. R. Prop.* 411 ; *Doe, ex dem. Grubb*, v. *Earl of Burlington*, 5 B. & Ad. 507 ; 2 *Saund.* 259 *a*, note *o* ; *Pynchon* v. *Stearns*, 11 *Met.* 304 ; 1 *Washburn R. Prop.*

108 ;) and that the action is founded partly upon the common law and partly upon the statute, and does not depend for its support on any covenants of the tenant; (22 *Viner Abr.* 457, *Waste M.* 4; 3 *Bl. Com.* 227; *Kinlyside* v. *Thornton*, 2 *W. Black.* 1111; *Marker* v. *Kenrick*, 13 *C. B.* 188 ;) it is obvious that we must resort to the statute for the conditions on which the tenant is excusable for the waste done.

There is a class of cases in which tenants have been held not to be liable for waste resulting from non-repair where the lessor has entered into a covenant to make the repairs for the want of which the injury has happened. These cases go upon the ground that the injury was caused by the lessor's own default, on which he can base no right to recover. There is no such covenant in the lease now under consideration.

The statute forbids waste by the tenant " without special license, in writing, making mention that he may do it." The consent of the landlord by parol will not be sufficient authority. *McGregor* v. *Brown*, 6 *Seld.* 114. The words usually employed for this purpose are " without impeachment of waste," but any words of equivalent import will be sufficient, provided they amount to a license to do the acts. The defendant, to bring himself within the statute, relies on that part of the lease which relates to the re-delivery of the personal property leased, in connection with the stipulation giving the defendant the privilege of expending a portion of the rent in each year for repairs. The covenant as to the personal property is entirely distinct from the obligations of the tenant, with respect to the real estate. The privilege of expending a portion of the rent reserved in repairs, is not a license to the tenant to omit a duty put upon him by the statute, growing out of the relations between the parties. To construe a privilege given by the landlord to expend his money in the reparation of the demised premises, as a license to the tenant to omit his duty, to the spoil or destruction of the inheritance, would be an entire subversion of the obvious

intent of the landlord. If it falls short of a license for the act complained of, it does qualify or abridge the obligations of the tenant which exist independent of the provisions of the lease.

It was further insisted that if any action lies, it should be an action *ex contractu*, and not in *tort*. As already observed, the gravamen of the action is the breach of a statutory duty. An action on the case founded in *tort* will lie for the breach of a duty though it be such as that the law will imply a promise on which an action *ex contractu* may be maintained. *Brunell* v. *Lynch*, 5 *B. & C.* 589. To the same effect are the cases of *Kinlyside* v. *Thornton* and *Marker* v. *Kenrick*, already cited, in which it was held that an action on the case in the nature of waste, will lie, although the act complained of might also be the subject of an action for the breach of an express covenant.

Rule discharged.

BEASLEY, CHIEF JUSTICE, and Justice DALRIMPLE, con-concurred.

CITED *in Miller* v. *Forman*, 8 *Vr.* 59.