## Elizabeth Gay Matteson *vs.* Robert L. Walsh.

No. 10-P-537.

Barnstable. November 12, 2010. - May 2, 2011.

Present: McHugh, Sikora, & Fecteau, JJ.

*Waste. Real Property,* Remainder interests. *Devise and Legacy,* Remainder interests, Residuary interests.

In an action for waste to real property, brought pursuant to G. L. c. 242, § 1, by the plaintiff, a holder of a remainder interest, against her brother, a life tenant, the judge correctly concluded that the brother's failure to pay the property taxes constituted waste, where the brother permitted the taxes to remain unpaid to the point that the taxing authority recorded a tax taking, even though no taking actually occurred [405-406]; further, the judge correctly found a degree of neglect to the property that amounted to severe and substantial deterioration against the right of the remainder interest, thus constituting waste [406-407].

In an action for waste to real property, brought pursuant to G. L. c. 242, § 1, by the plaintiff, a holder of a remainder interest, against her brother, a life tenant, the judge, having concluded that the brother's failure to pay the property taxes and to maintain the property constituted waste, erred in granting the brother a fee interest in common after having ordered divestment of his life interest, where, as specifically devised, the property passed to the holders of the remainder interest following termination of the life estate, and the brother could not be granted a remainder interest as a placeholder for his heirs, the determination of which this court left to be ascertained on remand. [407-411]

CIVIL ACTION commenced in the Superior Court Department on May 7, 2007.

The case was heard by *Robert C. Rufo,* J.

*E. James Veara* for the plaintiff.

*Peter S. Farber* for the defendant.

FECTEAU, J. This is a cross appeal from a Superior Court judgment that entered following a bench trial on an action for waste to real property in the town of Chatham (town). The plaintiff, Elizabeth Gay Matteson, brought this action as a holder of a

remainder interest against her brother, Robert L. Walsh, a life tenant. The judge concluded that Walsh's failure to pay the property taxes constituted waste, essentially because his failure to do so endangered the remaindermen's interest. The judge also determined that substantial deterioration of the property had occurred by Walsh's neglect of the property amounting to waste and injuring the remainder interest, and causing Matteson to make substantial payments to repair. The total monetary award to Matteson was about $65,000 (to reimburse her for approximately $12,000 in real estate taxes she paid plus approximately $53,000 in repair costs). The judge terminated Walsh's life estate and entered an order that title was to be held by Matteson, Walsh, and their sister Catherine T. Baisly as tenants in common. We affirm in part and reverse in part.

*Background.* The judge found the following facts, which neither party disputes as plainly wrong.[1] The property was inherited by Dorothy G. Walsh, the testator and the parties' mother in 1961; she devised it in her 1977 will to Walsh, as life tenant, and thereafter to the heirs of Walsh, Matteson, and Baisly.[2] The mother died in 1987, and Walsh, who had already been living on the property since 1962, continued to reside there. The property has been in the Walsh family for several generations, is slightly less than one-half acre, and is improved by three buildings: a home, first constructed in 1858, as well as a summer cottage and an unattached garage, both built in approximately 1900. The home contains two "apartments," with Walsh living on the first floor and the other rented out on a year-round basis; the cottage is also rented out on a seasonal basis. Walsh collected and kept all the rents.

---

[1]We also supplement with facts undisputed by the parties.

[2]The first clause of the simple, three-clause will of Dorothy Walsh states:

> "I devise my house at 61 School Street, Chatham, Barnstable County, Massachusetts, to my son, ROBERT L. WALSH, for his life provided he survives me for thirty (30) days, and in the event he does not so survive me or at his death, the remainder is to be divided in three (3) equal shares between the heirs of the said ROBERT L. WALSH, ELIZABETH G. MATTESON of Old Queen Anne Road, Chatham, Barnstable County, Massachusetts, and CATHERINE T. BAISLY of Morris Island Road, Chatham, Barnstable County, Massachusetts, or their heirs by right of representation."

Commencing in about 2004, for reasons unexplained, Walsh simply stopped paying taxes and water bills, resulting in the town's issuance in 2005 of a notice of tax taking. He also stopped maintaining the residences, and they fell into disrepair. Upon learning of the notice of tax taking, Matteson and Baisly stepped in and paid the delinquent 2004 and 2005 taxes of approximately $8,000, $6,000 of which Walsh repaid. Walsh, however, failed to pay taxes for the next three years, and Matteson again satisfied those taxes in an amount of about $13,000. Walsh did not reimburse her for any of these subsequent payments. Matteson also paid the water bills,[3] and she hired a "fix it up" man to repair the premises, which were apparently in considerable distress.[4] The total cost for these repairs came to about $120,000. Residing at the premises, Walsh was aware of these ongoing repairs and he made no objection, did not order the repair man to leave, and did not reimburse Matteson. Eventually, Matteson brought this action against Walsh for waste.

The judge found that Walsh had committed waste with respect to the nonpayment of taxes resulting in a tax-taking by the town and that Walsh had committed waste with respect to the deterioration of the buildings. While he did not itemize the particular aspects of the disrepair that he held to have constituted "substantial injury," the judge stated that his finding was made after review of all the evidence, which included the testimony of Walsh, Matteson, and Matteson's carpenter, and documentary evidence that included photographs and itemized bills paid by Matteson; the judge found that approximately $53,000 of the $120,000 paid by Matteson was necessary for repair of the property. Implicit in this finding was that the amount ordered to be repaid by Walsh was for the repair of substantial structural items, many of which Walsh himself had listed on a maintenance priority list that he gave to Matteson indicating that repairs were needed soon or as soon as possible. The evidence showed that there were many parts of all three buildings that

---

[3]The judge did not find that Walsh's nonpayment of water and insurance bills constituted waste. Matteson does not appeal from that portion of the judge's decision.

[4]The work for which Matteson paid also consisted of external repair of the grounds, referred to as landscaping; the judge did not find that such constituted waste.

were open to the weather and not watertight, resulting in structural rot.[5]

*Discussion.* 1. *Waste.* Matteson brought this action against Walsh pursuant to the provisions of G. L. c. 242, § 1, which states, in relevant part, that "[i]f a tenant in dower, by the curtesy, for life or for years commits or suffers waste on the land so held, the person having the next immediate estate of inheritance may have an action of waste against such tenant to recover the place wasted and the amount of the damage." Waste has been defined as "an unreasonable or improper use, abuse, mismanagement, or omission of duty touching real estate by one rightfully in possession, which results in its substantial injury." *Thayer* v. *Shorey,* 287 Mass. 76, 81 (1934), quoting from *Delano* v. *Smith,* 206 Mass. 365, 370 (1910) (*Delano*). In *Delano, supra,* the court further defined waste as "the violation of an obligation to treat the premises in such manner that no harm be done to them and that the estate may revert to those having an underlying interest undeteriorated by any wilful or negligent act. *Pynchon* v. *Stearns,* 11 Met. 304 [(1846)]. *United States* v. *Bostwick,* 94 U.S. 53, 65 [(1869)]. *Moore* v. *Townshend,* [33 N.J.L. 284 (1869)]." Referring to its historical application, the *Delano* court noted "waste" frequently was used "in an agricultural sense, where it means a damaging use not in accordance with good husbandry. . . . It generally consists in some definite physical injury. This is shown by reference to the earlier definitions, as for instance that of Blackstone, who calls it a 'spoil or destruction in houses, gardens, trees and other corporeal hereditaments.' 2 Black. Com. (Sharswood's ed.) 281." *Delano, supra* at 370-371. Walsh argues that his actions in failing to pay taxes and in failing to maintain the buildings does not amount to waste resulting in substantial injury to the interest of the remainder. We disagree.

a. *Taxes.* Walsh committed waste by failing to pay the taxes on the property, which resulted in a taking by the town. Walsh

─────────

[5]The itemized bills paid by Matteson included, among others, (a) for the house, the replacement of a rotted sill, fascia boards, and a roof rafter, rebuilding the porch from the footings up, repair and reshingling of the roof and house, and repair of foundation holes; (b) for the cottage, replacement of a rotted sill, reshingling of the roof and one wall, and repair of the damaged foundation; (c) for the garage, the jacking up and rebuilding of all four walls.

contends that a life tenant may not be held liable for waste for "merely" failing to pay property taxes, at least where, as in this case, the property has not actually been taken and sold. This is incorrect.

The town in fact issued a notice of taking. It is true that the town never actually seized the property and sold it; however, implicit in the judge's findings was that this step was not taken due only to Matteson having stepped in, paying the taxes then overdue, and satisfying that debt. Although no reported decision explicitly holds so, compare *Thayer* v. *Shorey*, 287 Mass. at 81, the threat to the remainder interest here is sufficient to constitute "prejud[ice] to the inheritance." *Pynchon* v. *Stearns*, 11 Met. at 310. Permitting the real estate taxes assessed to the property to remain unpaid to the point that the taxing authority records a tax taking amounts to waste.

b. *Damage to property.* Walsh committed waste by failing to maintain the property. Walsh contends that the judge's finding that Walsh failed to maintain the property amounts to permissive waste, for which he, as a life tenant, cannot be liable. While this may be an accurate statement of the law as it applies to a tenant at will, see *Chalmers* v. *Smith*, 152 Mass. 561, 564 (1891), and *Gade* v. *National Creamery Co.*, 324 Mass. 515, 517 (1949), a life tenant is under a higher duty to preserve the estate for the benefit of the remaindermen. See *Lothrop* v. *Thayer*, 138 Mass. 466, 475 (1885). "At common law, a tenant for life, or for years, or at will, was not liable for waste, but tenants for life or years were made liable by the statute of Marlebridge, 52 Hen. III. c. 23, and by the statute of Gloucester, 6 Edw. I. c. 5. . . . *Sackett* v. *Sackett*, 8 Pick. 309 [(1829)]. A tenant at will was not within these statutes, and it was held that, although a tenant at will might be liable to his landlord in an action of trespass for voluntary waste, no action would lie for permissive waste. . . . Our statutes give an action of waste, or of tort in the nature of waste, against a tenant in dower, by the courtesy, or for life or years, but not against a tenant at will." *Lothrop* v. *Thayer, supra* at 472-473.

While there appears to be no evidence that Walsh affirmatively destroyed or removed anything from the property, the judge found a degree of neglect that amounted to severe and substantial

deterioration against the right of the remainder interest that amounts to waste. The judge determined that about half of Matteson's repair expenses constituted damages for waste. The judge's decision to award Matteson damages representing approximately $53,000 for the amount of significant structural repair necessitated by Walsh's neglect, and to reimburse Matteson for her payment of taxes was likewise amply supported by the evidence and within the authority of the governing statute.

2. *Relief.* Matteson complains in her cross appeal that the judge erred by granting Walsh a fee interest in common after having ordered divestment of his life interest.[6] She contends that since Walsh had no interest in the remainder and that the remainder had not lapsed, it was error to look beyond the specific bequest of the real estate to the residuary clause to determine the testator's intent with respect to Walsh. Matteson's essential argument is that because the devising instrument specifies that Walsh's "heirs" are to take upon termination of Walsh's life estate, and because Walsh has no "heirs" other than his two sisters, the fee interest should now pass to Matteson and Baisly, alone, as tenants in common. Walsh, unsurprisingly, contends that the judge's ruling was correct in this respect.

It is settled law that the real estate does not pass under the residuary clause unless, under the specific bequest of the real estate, the remainder interest has lapsed. *Worcester Trust Co.* v.

---

[6]In his memorandum denying Matteson's motion under Mass.R.Civ.P. 59(e), 365 Mass. 827 (1974), the judge stated:

"[Matteson argues] that the language of the will should be interpreted to mean that Matteson and Baisly take with Walsh's heirs, not with Walsh himself. As this Court noted . . . currently Walsh's only heirs are his sisters, Matteson and Baisly. . . . However, no person has heirs until he or she dies. . . . Walsh may marry and/or have a child before the end of his life, and therefore the class of persons that are his heirs is open. Plaintiff's contention that Matteson and Baisly are Walsh's current heirs is therefore unavailing.

"Moreover, a close reading of [the testator's] will reveals that she did not intend to divest Walsh of any interest in the property. The language of the will does not contemplate the life estate's termination for any reason other than Walsh's death. In addition, Walsh is named, with his sisters, in the residuary clause. For these reasons, the Court declines to alter its judgment and reiterates that the three siblings . . . take the property as tenants in common."

*Turner,* 210 Mass. 115, 121 (1911). *Flannery* v. *McNamara,* 432 Mass. 665, 669 (2000). Walsh's citation to *Crowell* v. *Chapman,* 257 Mass. 492, 498 (1926), is correct, insofar as it holds that a life tenant may also be a remainderman; however, in order to be such, the life tenant must also be a member of the class of remaindermen. Here, it is the "heirs of Walsh," not Walsh himself, who hold membership in the class of remaindermen. Given that Walsh's two sisters appear to be his present heirs and that they each have children, it is clear that the remainder interest has not lapsed. To have found otherwise "would require us to read into the instrument a provision that is not there." *New England Merchs. Natl. Bank* v. *Morin,* 16 Mass. App. Ct. 104, 108 (1983). As specifically devised, Walsh does not take a remainder interest, because the remainder interest has not lapsed. Further, Walsh cannot take under the residuary clause as it does not operate to control the devise of the real estate.

Walsh contends that he is entitled to take a direct remainder interest under the residuary clause of the will[7] because his interest in the "house" was merely a right to occupy the house and that by her use of the term "house," the testator did not intend to divest him of the property on which the house is located. Thus, he alleges, the three siblings were given a direct, equal fee in common, subject to Walsh's right to occupy. First, the trial judge correctly foreclosed that claim by reference to Walsh's admission, in answer to the complaint, that his life estate was to the "property."[8]

Second, "[t]ypically, 'a conveyance "to B during his life" or "to B until his death" or other similar words of limitation will create a life estate in B.' " *Hershman-Tcherepnin* v. *Tcherepnin,* 452 Mass. 77, 87-88 (2008), quoting from Alperin & Shubow, Summary of Basic Law § 17.15, at 584 (3d ed. 1996). As this

---

[7]The residuary clause is the second clause of the testator, which states:

> "I give, devise and bequeath all the rest, residue and remainder of my estate, wherever situate and of whatever kind and nature, in equal shares, to my children ROBERT L. WALSH, ELIZABETH G. MATTESON, AND CATHERINE T. BAISLY, or their heirs by right of representation."

[8]In his answer to paragraph four of the complaint, Walsh admitted, among other things, that "Walsh was granted a life estate in 61 School Street, Chatham, Massachusetts (hereinafter 'Property')."

grant used such terms to describe the gift to Walsh, we believe that a life estate was given to him, not merely a right to occupy the house. In addition, the clause used the language of remainder interests. *Hershman-Tcherepnin* v. *Tcherepnin, supra* at 89.

Third, as a devisee of real estate, Walsh cannot have a interest in the "house" separate from the "property." The first clause clearly implies that the testator considered her "house" to be conterminous with her property. Since the words used in the will expressed an interest in realty, with nothing to suggest that the house was to be considered as separate and apart from that realty, it is not to be treated as divisible from the property. Moreover, the testator's intent that her property pass under the first clause is supported by the second clause, the residuary clause, wherein she gave all the *rest* of her property.

Furthermore, the plain and commonly understood terms of the first clause show that Walsh was bequeathed a life estate in the property, not merely a right to occupy the house, because the testator did not use different terms to distinguish what she was giving as the life estate and the remainder interest. The fallacy of Walsh's interpretation can be seen if taken to its logical conclusion — the remainder could only be of that interest which Walsh himself was given, i.e., if his life estate was merely a right to occupy the house, then the interest that passed as the remainder would likewise be a right to occupy the house, a prospect that lacks a basis in law or logic. Since the remainder was to be "divided in three (3) equal shares," it is likewise illogical to consider the house as separate from the property or that the testator could reasonably have intended that outcome. Walsh's actions also show that he considered himself as holding a life estate in all the property as he collected rent from the seasonal cottage and used the property as he saw fit.

The judge's decision to grant Walsh a one-third undivided interest in the property in common with his sisters under the residuary clause is thus incorrect and cannot stand. The property passes instead to the holders of the remainder interest following termination of the life estate. Nor can Walsh be granted an interest under the remainder interest as a place-holder for his heirs, as yet unascertained, contrary to his contention and the ruling by the judge.

Such contention involves the issue as to what point in time Walsh's heirs are to be ascertained, given the judge's findings on Matteson's motion to alter or amend; it appears that one reason the judge granted a remainder interest to Walsh was that his heirs could not be ascertained until his death.[9] Historically, heirs were determined at the date of death of either the testator or the life tenant, depending on the governing life. See *Boston Safe Deposit & Trust Co.* v. *Schmitt*, 349 Mass. 669, 674 (1965). In this case, the governing life would be that of Robert Walsh. However, as noted in *Boston Safe Deposit & Trust Co.*, *supra* at 674 n.1, a change in the rule was effectuated, for instruments created after January 1, 1965, such as the will at issue here, by virtue of G. L. c. 184, § 6A, inserted by St. 1964, c. 307, § 1, which states:

> "In a limitation of real or personal property to a class described as the 'heirs' or 'next of kin' of a person, or described by words of similar import, to take effect in enjoyment upon the happening of an event within the period of the rule against perpetuities, the class shall, unless a contrary intention appears by the instrument creating such limitation, be determined as if such person died at the time of the happening of the event."

This statute has been interpreted to have created a presumption that heirs are to be determined as of the date of distribution, unless contra-indicated by the governing document. See 2 Belknap, Newhall's Settlement of Estates and Fiduciary Law in Massachusetts § 33.57, at 433 (5th ed. 1997). Therefore, given the divestment of the life estate by the judge by operation of G. L. c. 242, § 1, under which the remainder interests are to "recover the place wasted," and by operation of G. L. c. 184, § 6A, such a judgment (the grant of recovery of the real property

---

[9]We called for supplemental briefing on the issue of the interpretation of the class of beneficiaries under the remainder clause and wish to thank the parties for providing this additional assistance. We, and the parties, agree that the judge was correct in granting Matteson and Baisly direct remainder interests in the property; we find sufficient testamentary intent from the life estate being conditional upon Walsh's survival of the testator and for survival for thirty days after her death. The testator thus can be seen to have intended, in the event of Walsh's death, to provide for his heirs, along with his sisters directly, "or their heirs by right of representation."

by the remainder interests) results in the vesting of the remainder interest as it is an "event" that terminates the life estate. Accordingly, "distribution" is required as of the date of such recovery. This outcome is consistent with the general rule of law that favors vested over contingent interests. Thus, according to this latter statute, the remainder interests must be determined as of the date of recovery under c. 242, § 1, the statute of waste.

We also note from the record that Matteson and Baisly appear to be Walsh's only heirs, but as there was no definitive finding that such was the case as of the date of the termination of Walsh's life estate, a remand is necessary to ascertain the heirs in whom the remainder interests have vested.

So much of the judgment that grants an interest in common in the property at issue to Walsh is to be vacated; that portion of the judgment that grants a one-third undivided interest in the property in common to each of Matteson and Baisly is affirmed. The case is remanded for further proceedings consistent with this opinion, to identify the "heirs of Robert Walsh," and to grant such heirs an interest in the remaining one-third of the property.

*So ordered.*