WILLIAM R. COALE, *et al.*, Respondents, *vs.* THE HANNIBAL & ST. JOSEPH RAILROAD COMPANY, Appellant.

1. *Railroads—Patent smoke stacks—Fires communicated by particular engine— Proof as to fires caught from other locomotives.*—In suit against a railroad company for damage caused by the escape of sparks from a locomotive, testimony offered to prove the insufficiency of the engine or the negligence of the engineer by showing that fire had escaped from other locomotives of a similar pattern was rejected as collateral and incompetent.

2. *Action for waste by a tenant at will against a stranger.*—A tenant at will or by sufferance is not liable to his landlord for waste committed by a stranger, and will have no action against the stranger therefor.

3. *Instructions calculated to confuse, etc.*—Instructions substantially given in another form, and those calculated to confuse or mislead, are properly rejected.

4. *Damage—Destruction of property by fire escaping from locomotive—Presumption of negligence.*—The settled law of this State is that proof of the destruction of property, by fire escaping from a locomotive, raises a *prima facie* case of negligence, which defendant must rebut by proof showing absence of negligence. Whether this is done is a question for the jury.

## *Appeal from Buchanan Circuit Court.*

*M. Oliver, with W. P. Hall,* for Appellant.

The *prima facie* case of negligence could be rebutted by showing that the locomotive doing the damage had the best and most approved machinery in good condition, and was in the care of skilful and prudent men. (37 Mo., 287 ; 46 Mo., 456 ; 45 Mo., 352.) Evidence of fires caused by defendant at other times and places is inadmissible, unless it be shown that the other fires were set by the engine causing the damages complained of. (4 Md., 242 ; I. Redf. Rail., 476.)

*H. M. Ramsay, with W. H. Sherman,* for Respondents.

The defendant having introduced testimony tending to show that all its engines had been for four years supplied with the most improved machinery and appliances for preventing fire, and that fire could not escape from its engines, it was competent for plaintiff to rebut that testimony by showing the frequent occurrence of fire produced by defendant's passing engines, provided with the same improved spark arresters.

The instructions given by the court, on motion of plaintiffs, were proper, and presented the law under the facts of the case, and, in connection with the instructions given on defendant's side, presented the case fairly to the jury. (See Fitch vs. Pacific R. R., 45 Mo., 322; Bedford vs. Hann. & St. Jo. R. R., 46 Mo., 456; Clement vs. Hann. & St. Jo. R. R., 53 Mo., 366.)

The court properly instructed the jury that plaintiffs were entitled to recover for the negligent burning of the fence by defendant. Plaintiffs, it is true, were tenants on the farm when the fence was destroyed, but as tenants they were answerable to the landlord for the destruction of the fence. (See Mason vs. Stiles, 21 Mo., 378; 4 Kent Com., 77; Tayl. Ld. & Ten., §§ 178, 344.)

Vories, Judge, delivered the opinion of the court.

This action was brought to recover damages from the defendant for the burning of several stacks of hay and a string of fence, made of posts and planks, alleged to be the property of the plaintiffs, which, it was alleged, was burned by fire escaping from a locomotive used by plaintiff on its railroad.

The defendant, in its answer, does not deny that it is a corporation owning, using and occupying a railroad as is charged in the plaintiffs' petition; but it denies all other material allegations in the petition.

The case was tried by a jury.

The plaintiffs introduced evidence tending to prove that they jointly owned eight stacks and a large rick of hay, situate a short distance north of defendant's railroad, in Buchanan county, State of Missouri; that there were about forty tons of the hay which was worth from $8 to $10 per ton; that on the 20th day of October, 1872, the hay was burned by fire escaping from a locomotive which propelled a train of cars on defendant's railroad, which was run and conducted by the agents of defendant, and which had passed said stacks just before the fire was discovered. The petition alleged that the same fire burned up a fence situate on the farm where the

hay was situated; that the fence was constructed of plank and posts; that the fence and farm on which it was situate were the property of Mrs. Corby; that plaintiffs had rented the farm of Mrs. Corby and were in possession of the same as her tenants; that the fence burned was worth over one hundred dollars; that the fire took place about sundown on the evening of the 20th of October, 1872, and the witness thought that the train which had just passed was a passenger train, but was not certain.

The defendant, on its part, introduced evidence tending to show that locomotive No. 6, on defendant's road, left St. Joseph on the 20th of October, 1872, propelling a train of cars, about thirty minutes after five o'clock in the evening, and passed the point on the road opposite where plaintiffs' hay was situate about six o'clock in the evening; that it was a passenger train; that said locomotive, No. 6, was a good, safe locomotive; that it was supplied with the most modern and safe chimney and spark arrester in use, and was one of the safest contrivances to prevent the escape of fire from a locomotive running on a railroad, now in use. The evidence further tended to prove that the said locomotive, numbered six, was run by a good, safe engineer, and other employees, etc.

On cross-examination of the defendant's witness by plaintiffs' attorney he stated that the defendant had used the same kind of spark arresters on all of their engines for four years, which was used on said engine numbered six. Only the one witness was examined by the defendant and he was shown to be defendant's master mechanic at the west end of its road.

After the evidence was closed on the part of the defendant, the plaintiffs called two witnesses, of whom he asked the following question, to-wit: "Did you, in the fall of 1872, see any other fires, than the one in controversy, along the line of defendant's railroad, in the neighborhood of the fire started by the defendant's engine?" To this question the defendant objected on the ground that the evidence attempted to be elicited was irrelevant and immaterial, and would not tend to prove the condition of the engine from which the fire escaped

which burned plaintiffs' property, or to show that the agents conducting the same, acted carelessly or negligently, or to rebut the evidence of defendant which tended to prove the absence of negligence of the defendant in reference to the engine numbered six, or the agents thereon.

This objection was overruled and the witnesses were permitted to testify that they had known other fires to take place along defendant's railroad in the vicinity of the place where plaintiffs' hay was burned, during the fall of 1872. The defendant at the time excepted.

The court, at the instance of the plaintiffs, gave the jury instructions as follows:

1. "If the jury believe from the evidence, that plaintiffs' hay and fence described in the petition, were burned on or about the time mentioned in the petition, and that the fire which caused the injury sued for was set by or escaped from a railroad engine being run by the defendant on its railroad, then the jury will find for plaintiffs, unless the jury further believe from the evidence that such fire was caused without any negligence on the part of defendant's servants or employees; and the burden of proving such want of negligence rests upon the defendant."

2. "Though the jury believe from the evidence that the engines of defendant were supplied with a 'spark arrester' and other contrivances, to prevent the escape of fire from the engine, of the most approved pattern and style; yet if the jury believe from the evidence that the employees or servants of defendant, operating its locomotive and train of cars at the time of the fire mentioned in the petition, failed or neglected to exercise due care and caution in so operating and running said locomotive and train of cars, and that from such want of due care and caution, the said fire was communicated by said locomotive or train to the hay and fence of plaintiffs, described in the petition, then they will find for the plaintiffs."

4. "The court instructs the jury that if they believe from the evidence that plaintiffs' property was destroyed by fire, thrown from a passing engine of defendant while being run

on defendant's railroad, then the jury may presume negligence on the part of defendant."

5. "If the jury find for plaintiffs, they will assess the damages at the value of the hay and fence at the time it was burned."

6. "The jury are the sole judges of the weight of the evidence, and the credibility of witnesses, and if the jury believe any witness has wilfully sworn falsely about any material fact, they may disregard the whole of such witness' testimony."

The defendant, at the time, objected to all and each of the foregoing instructions, and its objection being overruled it excepted.

The court then, at the instance of the defendant, gave the following instructions:

1. "Defendant is not compelled to provide engines which will absolutely or entirely prevent the escape of sparks or fire, but only such engines as experience has shown to be the best in use."

2. "If the jury believe from the evidence that the damages claimed are caused by the fire escaping from defendant's engine; and find further that the engine was in good order, properly constructed and supplied with the best appliances in use, to prevent the escape of fire, then defendant was not guilty of negligence, in such escape of the fire, and is not liable; unless the fire escaped through negligence of the agents and servants of the defendant in managing the engine and machinery."

3. "The court instructs the jury on behalf of the defendant, that in order to charge the defendant, the plaintiffs must affirmatively show, by a preponderance of evidence, that the fire which caused the damage for which this suit is brought escaped from the engine of defendant."

The defendant also asked the court to give the jury a number of instructions which were refused by the court, among which were the following:

"The court instructs the jury that if they find for the plaintiffs they will not include in their verdict any sum as compensation for fence, fencing boards or fence posts, or for the cost

of erecting a new fence in the stead of the one burned; and as to that item plaintiff cannot recover."

"The court instructs the jury that the burden of proof is upon the defendant, to show the competency and carefulness of its servants and agents, and the proper condition and most improved make of engines and machinery to prevent the escape of fire; that after this has been done. it rests on the plaintiffs to show that the damage complained of by plaintiffs was caused by the negligence of defendant's agents or servants, and that there is no inference in favor of plaintiffs."

The jury found for the plaintiffs and assessed their damages at the sum of three hundred and eighty five dollars, upon which judgment was rendered.

In due time, defendant filed its motion for a new trial, which was overruled by the court and the defendant excepted and appealed to this court.

The first question presented by the record, for consideration in this court, is as to the propriety of the action of the court in permitting the plaintiffs to prove on the trial that other fires had happened along the line of the defendant's railroad during the fall of the year 1872, in the vicinity of the place where the plaintiffs' hay was burned, which was caused by the escape of the fire from some of defendant's engines.

It is insisted by the plaintiffs, that this evidence was admissible to rebut the evidence of the defendant tending to prove the absence of negligence on its part. The evidence in the case clearly shows that if the fire was communicated to the plaintiffs' hay, by sparks or fire escaping from the defendant's engine, it was so communicated from engine numbered six, which had just passed the place when the fire was discovered. The evidence in chief of the only witness examined on the part of the defendant, was directed to the proof of facts to show that said engine numbered six, was a good, safe engine which was supplied with the most approved "spark arrester," and that it was, at the time of the fire, manned by competent and careful servants, etc. The evidence elicited by the cross-

examination of the witness by the plaintiffs elicited the fact that all the locomotives or engines, used on the defendant's road, were provided with the same kind of "spark arresters."

The plaintiffs, in order to rebut the evidence thus brought out by themselves, claim that they had a right to prove that other fires had occurred along the railroad of defendant, caused by the escape of fire from some of the defendant's engines. This evidence, it seems to me, was collateral to the issues in the case. To prove that some one of defendant's engines was insufficient, or that the hands on some of said engines had so carelessly conducted the same as to permit the escape of fire, is not competent evidence to prove that the persons conducting engine No. 6, on the 20th of October, 1872, were negligent, or that the said engine was insufficient; and said evidence could not be made competent by the attempt thereby to rebut evidence which was wholly immaterial, and which had been elicited by the plaintiffs. The evidence was collateral and ought to have been excluded by the court. (Baltimore & Susquehanna R. R. Co. vs. Woodruff, 4 Md., 242; and cases there cited.)

It is next objected by the defendant that the court, by the fifth instruction given on the part of the plaintiff, told the jury that if they found for the plaintiffs they should find for them the value of, not only the hay burned, but also for the fencing consumed on the farm occupied by the plaintiffs at the same time.

The plaintiffs insist that, as they were tenants of Mrs. Corby, who, it is admitted, was the owner of the farm and of the fencing consumed, they were liable to her for the fence, and were bound to her to repair, although the act causing the waste was committed by a stranger; and that as they are liable to their landlord for the waste committed by a stranger, they have an action over against said stranger, to recover the amount of the damage done by the waste. It may be, and has been so held, that a tenant for life and tenants for years are liable for waste committed during their terms, even by a stranger, or by whomsoever it may be committed, except where it is caused by the

act of God or the public enemies. (Mason vs. Stiles, 21 Mo., 374; 4 Kent, 77; Davis vs. Smith, 15 Mo., 468.)

It has also been holden that the tenants, being bound to answer in such cases, to their landlord, in the full value of the waste committed, were entitled to recover a like amount against the stranger by whose act the waste was committed. (Austin vs. Hudson River R. R. Co., 25 N. Y. 334; Cook vs. The Champlain Transportation Co., 1 Denio, 91.)

The 10th section of the statute of this State, concerning "contracts and promises," has not changed the law in this respect, at least as to the destruction of fences, etc., on a farm. In the case under consideration, however, the evidence fails to show under what kind of lease or tenancy the plaintiffs were in possession of the land and of the fence destroyed. It is not shown whether they were tenants for life or for years, or whether they were merely tenants at will or by sufferance. It should have been shown, by the evidence, what was the nature of the tenancy by which the plaintiffs held the premises injured; for if they were only tenants at will, they were not liable for waste committed by a stranger. In the case of Harnett vs. Maitland (16 Mason, Mees. & W., 256), the learned judge delivering the opinion, in discussing the very question in this case, remarked, "we are all of opinion, however, that the declaration is defective, on general demurrer, for not bringing the case within the class of persons who are liable for the permissive waste, for want of an averment that the defendant was tenant for life or years, it being agreed on all hands that a tenant at will is not liable for permissive waste."

In the present case, the plaintiffs should have shown, by the evidence, that they held by the kind of tenancy which would make them liable for permissive waste. Having failed to show such tenancy, the court erred in instructing the jury to find the value of the fence, and in refusing to give the instruction asked by the defendant on the same subject.

The defendant also insists that the court erred in refusing the instruction asked by it as secondly copied herein as instructions refused. It is sufficient to say that the principle

attempted to be asserted by that instruction had been better given in the second instruction given on the part of the defendant. The instruction refused was calculated to confuse a jury by its manner of shifting the issues on the different parties. The law, as settled in this State, is, that where it is proved that the property was destroyed by fire escaping from the defendant's engine, a *prima facie* case of negligence is made out; that the burden is then thrown on the defendant, by its evidence, to rebut the presumption of negligence by showing the absence of negligence. Whether this is done by the evidence is a question for the jury which can be decided by them, without shifting the burden from one party to the other, as the evidence progresses, and as seems to be contemplated by the instruction refused. (Bedford vs. Hann. & St. Jo. R. R. Co., 46 Mo., 456; Clemens vs. Hann. & St. Jo. R. R. Co., 53 Mo., 366, and cases cited.)

The instructions given by the court, when all taken together seem to conform to the law as laid down in the cases above referred to, except the one hereinbefore specially referred to.

For the errors hereinbefore stated the judgment will be reversed and the case remanded; the other judges concur. ·