HORACE A. LOTHROP *vs.* HORATIO B. THAYER & another.

Norfolk. Nov. 14, 15, 1883. — Jan. 12, 1885. C. ALLEN & HOLMES, JJ., absent.

A tenant at will of a part of a building, the other part being occupied by the landlord, and in each part of which personal property of the landlord is contained, is liable for the destruction of the part in the possession of the landlord and its contents by fire, caused by the negligence of himself or his servants in kindling or guarding fires in stoves used for heating the part of the premises let to him; but he is not liable for the destruction of the part so let from the same cause, if the burning is not intentional, and the negligence is not so gross as to amount to recklessness. The liability of the tenant for the landlord's chattels in the possession of the tenant depends upon the nature of the bailment.

CONTRACT, with a count in tort, to recover for the loss by fire of a building in Sharon, and certain personal property therein. Trial in the Superior Court, before *Gardner*, J., who reported the case for the determination of this court, in substance as follows :

The plaintiff was the owner of a large wooden building in Sharon, four stories in height, which was fitted for the manufacture of shoes.

At the time of the letting hereinafter referred to, it had been unoccupied for several years, except that the plaintiff had used a part of the second story of the building for the manufacture of stockings.

In the latter part of December, 1879, or in the early part of January, 1880, the plaintiff and the defendant Thayer had a conversation, in which the plaintiff agreed to let, and Thayer agreed to hire, the building, except the rooms in the second story occupied by the plaintiff, for one year from that date, for $50, with the privilege on the part of the tenant of occupying the premises for another year at $150 rent. It was in controversy whether Thayer made this bargain for himself alone, or for both defendants; and whether the defendants were in fact partners during their occupation of the building, or carried on business separately, and whether the other defendant hired the building, or so much as he used, from Thayer. No lease or written agreement of any kind was executed between the plaintiff and either of the defendants, or between the defendants

themselves. Shortly after the agreement between the plaintiff and Thayer, the defendants went into occupation of the building, set up machinery, moved in stock, employed workmen, and carried on the business of the manufacture of shoes, using for this purpose all of the building except that part occupied by the plaintiff for the manufacture of stockings, as above stated, and not let.

The lower part of the building was heated by steam, but on the fourth story, which was used by the defendants, two stoves were used, one of which belonged to the plaintiff, the other being furnished by the defendants, and both of which had been put in position by the defendants some weeks before the fire. A jug of kerosene oil was kept in this room, from which the lamps used in the building were filled.

There was evidence tending to prove that these lamps were filled by different persons in the defendants' employ, and sometimes by the defendants themselves; that, in filling these lamps, some oil had been spilled on the floor; and that there were cracks in the chimney, which contained but a single flue, and was used for four different fires in the building. There was other evidence as to the condition of things in the building, and the conduct of the defendants before the fire, bearing upon the question of their negligence. There was also evidence upon the question whether the defendants intentionally set fire to the building.

The building and its contents, including the plaintiff's machinery, stock, and other property, the larger part of which was in the part of the building not let, and the defendants' machinery, stock, and other property, were destroyed by fire, about midnight, on December 10, 1880.

The plaintiff contended that the defendants intentionally set the fire; that they or their servants were guilty of negligence in the care of the fires and of the kerosene oil; that such negligence occasioned the fire; and that, upon either ground, the defendants were liable. The defendants denied that they intentionally set the fire, or that they or any of their servants were guilty of negligence, as contended; and requested the judge to rule that, as matter of law, they were not liable for mere negligence.

The judge instructed the jury that the defendants would be liable if they wilfully combined to set fire to the building, or if the fire was caused by their negligence.

The jury returned a verdict for the plaintiff; and the following questions in writing were put to them: "1. Was the property of the plaintiff burned by the carelessness and negligence of the defendants, or either of them? 2. Was the property of the plaintiff burned by the defendants, or either of them, intentionally?" The jury answered the first question in the affirmative, as to both the defendants; and the second question in the negative. If the rulings were correct, the verdict was to stand, and the case be sent to an assessor to assess the damages; otherwise, the verdict and special findings to be set aside.

*R. M. Morse, Jr. & H. L. Harding*, for the defendants.

*A. Churchill & G. O. Shattuck*, for the plaintiff.

FIELD, J. The property destroyed or damaged by fire was, first, the portion of the building let by the plaintiff to the defendants, or to one of them; second, the remaining portion of the building belonging to the plaintiff and in his possession; and third, personal chattels of the plaintiff in part in the portion of the building let, and in part in the remaining portion. The liability of the defendants for the damage to the personal chattels stored with them must be determined by the degree of care required of such bailees as they were; and, although there has been much criticism upon the use of the words "gross," "ordinary," and "slight," as applied to negligence or care, it seems established that different degrees of care are required of different kinds of bailees, by whatever form of words the degree of care required may be expressed. The liability of the defendants for the damage to the personal property in the portion of the building in the possession of the plaintiff must be the same as their liability for the damage to that portion of the building; and this is the liability which every occupant of a building is under for a fire originating in it which extends to, and injures, the property of his neighbor. Assuming both defendants to be tenants of the plaintiff, their liability for the damages to the portion of the building let to them is the liability of tenants at will to their landlord.

The defendants requested an instruction that they were not liable for mere negligence, which was refused; and the court instructed the jury that, " if the fire was caused by their negligence," they would be liable, which means liable for the whole loss.

It is said that, by the ancient common law, if a fire is kindled in a house by the occupant, or by his servant, or any member of his household, or his guest, and it spreads to his neighbor's property and destroys it, he shall make good the loss. It is not certain, however, that the action did not proceed on the ground of negligence, either presumed or proved. *Beaulieu* v. *Finglam*, Y. B. 2 Hen. IV. fol. 18, pl. 6. *Althorf* v. *Wolfe*, 22 N. Y. 355, 366. *Filliter* v. *Phippard*, 11 Q. B. 347. *Tuberville* v. *Stamp*, 12 Mod. 152; 1 Salk. 13; 1 Ld. Raym. 264. *Anon.* Cro. Eliz. 10. *Smith* v. *Brampston*, 2 Salk. 644; 1 Ld. Raym. 62; 5 Mod. 87. Com. Dig. Action upon the Case for Negligence, (A) 6. Bac. Abr. Actions on the Case, (F). Rolle's Abr. Action sur Case, (B) Fire. Gale on Easements (5th ed.) 398–419. 1 Bl. Com. 431. Add. on Torts (3d ed.) 240–243. Gibbons on Dilapidations & Nuisances (2d ed.) 99–102, 133–148.

By the St. of 6 Anne, *c.* 31, § 7, no action, suit, or process whatsoever shall be had, maintained, or prosecuted against any person in whose house or chamber any fire shall, from and after the said first day of May, accidentally begin, &c. Section 9 of the act provided, " that nothing in this act contained shall extend to, defeat, or make void any contract or agreement made between landlord and tenant."

By the St. of 14 Geo. III. *c.* 78, § 86, " No action, suit, or process whatever, shall be had, maintained, or prosecuted against any person in whose house, chamber, stable, barn, or other building, or on whose estate any fire shall, after the said twenty-fourth day of June, accidentally begin," &c., " provided that no contract or agreement made between landlord and tenant shall be hereby defeated, or made void." These statutes did not extend to the Colonies, although one or both were adopted by some of them; they were not adopted by Massachusetts. From the passage of this statute of Anne there are no English cases for one hundred and thirty years, and the opinion of lawyers seems to have been that the statute covered fires caused by

negligence, as well as by accident.   The St. of Geo. III., being
the statute then in force, was construed in *Filliter* v. *Phippard*,
*ubi supra;* and it was held that a fire intentionally kindled
by the defendant or his servant on his land, and negligently
guarded, was not an accidental fire within the meaning of the
statute.   The rule in this Commonwealth has always been, that
negligence is the foundation of the liability, and that the defend-
ant is liable for the want of ordinary care ; but the cases here
are all of fires set on land for the purpose of clearing it, or for
other purposes.   *Barnard* v. *Poor*, 21 Pick. 378.   *Tourtellot* v.
*Rosebrook*, 11 Met. 460.   *Higgins* v. *Dewey*, 107 Mass. 494.

The few cases which are reported, in which it was sought to
hold the defendant liable for the negligent acts of his servants
in kindling or guarding fires in buildings, show a tendency on
the part of courts to rule strictly upon the liability of mas-
ters for the acts of their servants.   *M'Kenzie* v. *M'Leod*, 10
Bing. 385.   *Williams* v. *Jones*, 3 H. & C. 256, 602.   See *Wood*
v. *Chicago, Milwaukee, & St. Paul Railway*, 51 Wis. 196.

The case which most nearly resembles the one at bar is *Read*
v. *Pennsylvania Railroad*, 15 Vroom, 280.   The plaintiff's build-
ing and its contents had been destroyed by a fire beginning in
the defendants' building, used for the storing of tools, oil, and
waste, and spreading to and consuming the building of the
plaintiff.   In the defendants' building was a stove, the heat of
which was necessary to preserve the fluidity of the oil in cold
weather.   On the morning when the fire occurred, the defend-
ants' servants, who had used the oil cans, had left the house
locked, with a fire in the stove.   There was evidence that the
stove was red-hot, and that there were not only oil cans around
the stove, but an oil can on the top of the stove.   The court
said : " I think the jury could conclude that the servants of
the defendants did not exercise the caution of persons of ordi-
nary prudence under these circumstances.   I think that no
prudent person would leave unattended a red-hot stove, or a
stove with its draft damper open, by reason of which it would
speedily become red-hot, upon which stove was standing a can
of oil, and around it was scattered inflammable waste."   And
the court declined to set aside a verdict for the plaintiff on the
ground that there was evidence of negligence.   It may be

thought, perhaps, that the evidence showed more than a want of ordinary care, although that seems to have been the standard adopted by the court.

Most fires originating in buildings are undoubtedly due to negligence in the construction, or to a want of repair, or to the bad condition of the building, chimneys, or heating apparatus, or to negligence in the management of the building or of the fires in it; and to require the occupants at their peril always to adopt all improvements which are practicable, and to take all reasonable precautions which science can suggest to prevent fires, or the spread of fires, would be intolerable; yet such has sometimes been held to be the rule of law for railroad companies in the construction and management of their locomotives, when their liability depends upon negligence, and for manufacturing companies using large chimneys in the construction and management of their chimneys and works.

The old English common law was thought to be hard; *Smith* v. *Brampston, ubi supra;* and the English statutes were passed. In 1843, Lord Chancellor Lyndhurst said : " I may further observe, that although cases of damage from the burning of houses occasioned by negligence have, doubtless, frequently occurred since the statute [of Anne], I do not recollect, in the course of a pretty long professional life, any instance of an action having been brought to recover compensation for this species of injury, nor do I find in the books any trace of such a proceeding." *Canterbury* v. *Attorney General,* 1 Phil. 306. *Vaughan* v. *Menlove,* 3 Bing. N. C. 468, and 4 Scott, 244, (1837,) decided that negligence in constructing and guarding a hay-rick on the defendant's land, by the spontaneous ignition of which the plaintiff's house was burnt, was actionable if the fire was occasioned by gross negligence of the defendant, although the statutes were not mentioned; and by gross negligence was meant the want of that care which a person of ordinary prudence would exercise; and, since *Filliter* v. *Phippard, ubi supra,* (1847,) the rule seems to have been regarded as established in England, that an action lies for the want of ordinary prudence in kindling or guarding a fire whereby the property of an adjoining owner is injured. This seems to be the universal American rule, but all the cases, with three or four exceptions, are of fires kindled on land, and

not in a building. It does not seem to have been considered whether any distinction can be taken between a fire lawfully kindled on land for clearing it, or for other purposes, and a fire kindled in stoves, fireplaces, or chimneys for the purpose of heating a building in the manner in which by its construction it was intended to be heated. It must, however, we think, be regarded as too well established to be overturned by judicial decision, that the occupant of a building is responsible to the owners of adjoining property for the want of ordinary care on the part of himself or his servants, acting within the scope of their employment, in kindling or guarding the fires used for heating the building.

The distinction between the liability of a tenant at will to his landlord, and of an occupant to his adjoining proprietors, for damage by fire, is sharply drawn in *Panton* v. *Isham*, 3 Lev. 359. On special verdict, it was found that the plaintiff was seised of six stables, and demised one to the defendant, for a week, for eight shillings, and so from week to week at eight shillings per week, as long as both parties should please, and demised the other five stables to other persons for divers terms yet to come, whereby they were possessed, and the fire by the defendant's negligence six weeks afterwards began in the stable demised to the defendant, and burnt the same and all the other stables; and it was held, " that for the stable demised to the defendant himself, no action lay; for the demise to him could be no more than a term for three weeks, and for the residue he was tenant at will, against whom no action lay for negligent waste, as 5 Co. 13, The Countess of Salop's case. But 3dly, as to the stables demised to the others, the action well lies, as if they were the stables of strangers, and not of the lessor; for as to them there is no privity between the plaintiff and defendant, but as to them they are as nothing."

At common law, a tenant for life, or for years, or at will, was not liable for waste, but tenants for life or years were made liable by the statute of Marlebridge, 52 Hen. III. *c.* 23, and by the statute of Gloucester, 6 Edw. I. *c.* 5. 2 Inst. 144, 299. Co. Lit. 53 *a*, 53 *b*. *Sackett* v. *Sackett*, 8 Pick. 309. A tenant at will was not within these statutes, and it was held that, although a tenant at will might be liable to his landlord in an action of

trespass for voluntary waste, no action would lie for permissive waste. Co. Lit. 57 *a*, note. *Daniels* v. *Pond*, 21 Pick. 367. Our statutes give an action of waste, or of tort in the nature of waste, against a tenant in dower, by the curtesy, or for life or years, but not against a tenant at will. Pub. Sts. *c.* 179, §§ 1, 3.

It was early decided that, if a tenant at will negligently kept or guarded his fire, whereby the house was burned, this was permissive waste, for which he was not liable to his landlord. *The Countess of Shrewsbury's case*, 5 Rep. 13 b, was this. The Countess of Shrewsbury brought an action in the case against Richard Crampton, a lawyer of the Temple, and declared that she leased to him a house at will, and " *quod ille tam negligenter et improvide custodivit ignem suum, quod domus illa combusta fuit*," &c. ; "and it was adjudged that for this permissive waste no action lay." *Countess of Salop* v. *Crompton*, Cro. Eliz. 777, 784, was an action on the case, and the declaration was, that the defendant, being in possession of a house, stable, and three barns, as tenant at will, " *tam negligenter et improvide* kept his fire in the said house, that through default of good keeping thereof, the said house, stable, and barns were burnt down," &c. ; and it was held " that for the negligent burning, this nor any other action lies." See Y. B. 48 Edw. III. 25, pl. 8.

The reasoning of these old cases is undoubtedly technical, but they were decided with full knowledge that an action lay for an injury to a personal chattel, caused by the negligent keeping of the bailee. *Countess of Shrewsbury's case, ubi supra.* It is admitted to be the law, that a tenant at will is not liable for permissive waste. *Harnett* v. *Maitland*, 16 M. & W. 257. *Moore* v. *Townshend*, 4 Vroom, 284. *Coale* v. *Hannibal & St. Joseph Railroad*, 60 Mo. 227.

But it is suggested that these defendants, under our statutes, were not tenants at will within the meaning of the rule ; and it is denied that the careless and negligent acts of the defendants, whereby the building was burnt, constitute permissive waste. The defendant's estate, not being created by an instrument in writing, had, under the Gen. Sts. *c.* 89, § 2, the force and effect of an estate at will only ; and it is therefore unnecessary to determine a question which has been somewhat disputed, whether

tenants from year to year are liable for permissive waste. The burning of a building through the negligent keeping of a fire by a tenant, is by modern text-writers regarded as permissive waste. 4 Kent. Com. 81. 1 Add. Cont. (8th ed.) 253. Add. Torts, 239. Smith's Ld. & Ten. (3d ed.) 287. Taylor's Ld. & Ten. § 349. Gibbons on Dilapidations (2d ed.) 108, 128. Comyn's Ld. & Ten. 171.

The diligence of the counsel for the plaintiff has not shown us any case in which it has been held that a tenant at will is liable to his landlord for injuries occasioned by his negligence in kindling or keeping fires in stoves, fire-places, or chimneys, intended to be used for heating the premises. Such a case is presented in *Scott* v. *Hale*, 16 Maine, 326, but the defendant had a verdict. The degree of care which the ruling at *nisi prius* required was that of " a discreet, prudent, and careful man in the possession of his own premises." Of this the court say, " We think this was a most liberal instruction in favor of the plaintiff. But we forbear now to go more minutely into the discussion of questions argued, not because they have not occupied our attention, for they have." The verdict was set aside on other grounds.

In the case cited of *Parrott* v. *Barney*, Deady, 405; *S. C.* on appeal, 1 Sawyer, 423 ; the tenancy was from year to year, and the damage was from explosive substances stored in the building. There is nothing in *United States* v. *Bostwick*, 94 U. S. 53, or in *Robinson* v. *Wheeler*, 25 N. Y. 252, that decides that a tenant at will is liable to his landlord for the burning of the building let, caused by negligence in guarding a fire kindled for the purpose of heating the building.

The law of negligence has been largely developed in recent times, and it is argued that there is no sound reason why it should not be applied in the same manner to real property as to personal, and to tenancies at will as well as to tenancies for a term. It may well be doubted whether the existing condition of the law of negligence is altogether satisfactory, and whether it would be wise to establish an unlimited liability to his landlord, on the part of every tenant at will of real property, for every injury occasioned by any act of negligence of himself or his servants, in the use of the property. However this may

be, we do not feel at liberty to overturn long-established rules of law governing real property.

We are not in this case required to consider the consequences of the negligent setting or guarding of fires, set for other purposes than such as are necessary to render the tenement fit for occupation, and in other places than those constructed or intended for the use of fires in heating the premises let. It is competent for landlords and tenants to make in writing any stipulations they see fit. When there is no writing, and the tenant takes the precarious estate of a tenancy at will, we think it has been generally understood that the tenant is not liable for the burning of the tenement let, occasioned by his negligence or that of his servants in the keeping of fires set for the purpose of heating the premises, and in the places designed for that purpose, so that they may be fit for occupation. The fact that no action can be found to have been maintained for this cause is strong evidence of this. The ancient law has been acquiesced in, and, consciously or unconsciously, the cost of insurance to the landlord, or the value of the risk, enters into the amount of the rent. We think on this part of the case the exceptions should be sustained.

If the law were to be established anew, it might with much force be contended that the test of the liability of the defendants in this case ought to be the same as to all of the property destroyed; but it would deserve consideration whether, in such a case as this, it would not be more reasonable to hold the defendants liable only for gross negligence amounting to reckless conduct.

The existing law has, however, introduced many distinctions. A bailee of chattels for hire is liable only for the want of ordinary care; but, if the bailee promises to return the chattel absolutely, then he is liable, although the chattel is destroyed by inevitable accident. *Harvey* v. *Murray*, 136 Mass. 377.

The obligations of tenants under a written lease to their landlords, except so far as statutes have imposed arbitrary liabilities, are determined by the construction of the lease. But landlords are at common law exempt from many liabilities towards their tenants, for the condition of the premises, which they are under towards strangers who are lawfully upon the premises while in

their possession. *Bowe* v. *Hunking*, 135 Mass. 380. *Woods* v. *Naumkeag Steam Cotton Co.* 134 Mass. 357.

Disregarding the use of fire in clearing land and for other agricultural purposes, and confining ourselves to the case at bar, which is the use of fire in stoves for the purpose of heating the building, it is manifest that, in many cases, prudence might require a reconstruction of the chimneys and the purchase of new stoves. In many cases, it would be difficult to determine how far the bad condition of the premises contributed to the injury occasioned by the fire. We think the reasonable rule is, that, if landlords would protect themselves from the mere negligence of their tenants, they should take a written lease, with proper covenants; and that a tenant at will is not liable to his landlord for the mere negligence of himself or his servants in kindling or guarding fires in stoves or chimneys for the purpose of heating the premises; but that he is liable for. wilful burning, and also for such gross negligence as amounts to reckless conduct. By the terms of the report, the verdict is to be set aside, and a *New trial granted.*