## *CLEVELAND, LORAIN & WHEELING R. R. CO. v. JOSEPH E. FREDENBUR.

1. MISNOMER OF CORPORATION—CORRECTION OF PLEADING.

The C., L. & W. Railway Co., having been sued as the C., L. & W. Railroad Co., pleaded the misnomer in abatement and also pleaded to the merits. Held: The latter plea enters the company's appearance and the court may permit the petition and summons to be corrected by inserting the true name.

2. BURDEN OF PROOF AS TO CONSTRUCTION OF APPLIANCES.

In an action against a railroad company for damages by fire emitted from the smoke stack, when it is shown by the evidence that a locomotive properly constructed and equipped with the best appliances in general use, will not emit sparks, and that the fire was caused by sparks from the company's locomotive, the burden of proof is upon the company to prove that its locomotive and appliances were properly constructed and in good order.

3. EFFECT OF INSPECTION—HIGH WINDS.

The inspection of the locomotive and appliances before sending it upon the road, and finding it then in good order, is not sufficient to avoid liability; they must be kept in good order on the line of road. And the fact that a high wind caused a greater draft and fire to escape is no defense unless it appears that a locomotive properly constructed with suitable appliances necessarily emits fire during a high wind.

4. FIRES ON OTHER ROADS—TOO REMOTE.

It is not competent for the defendant to show, that on another railroad, using the same kind of a spark-arrester, at the same time, fires occurred from sparks emitted from the smoke stack.

ERROR to the Common Pleas Court of Tuscarawas county.

The action below was brought to recover damages for the destruction of fences, corn, meadow and a sheep-house by fire, alleged to have resulted by reason of the negligence of the railroad company, in failing to have a proper and sufficient spark-arrester and proper appliances to prevent the emission of sparks from its locomotive, by reason of which, on the 22d day of July, 1884, the said property of the plaintiff below was destroyed by fire, to his damage $825.

It is averred in a second cause of action, that on the 1st day of August, 1884, by reason of said negligent acts of the railroad company, other property of the plaintiff, of the value of $50, was destroyed.

The line of railroad ran through the lands of the plaintiff below, situated in the county of Tuscarawas.

The name of the plaintiff in error is The Cleveland, Lorain & Wheeling Railroad Company, but suit was brought against The Cleveland, Lorain & Wheeling Railway Company.

The answer of the company set up two defenses, the first being a plea in abatement, in which the true name of the company was given; and the second defense was to the merits, being substantially a general denial.

After the company filed its answer, the court permitted the plaintiff to amend his petition by inserting the word Railroad and striking out the word Railway, and then sustained the demurrer to the first defense, which is one of the errors

---

* This judgment was affirmed by the supreme court without report, June 3, 1890.

complained of. The court, on its own motion, also ordered the summons to be corrected, by striking out the word Railway and inserting the word Railroad. This was done at the costs of the plaintiff below. A reply was filed to the second defense, the case tried to a jury, verdict for plaintiff below; motion for a new trial overruled, and the evidence embodied in a bill of exceptions.

In addition to the above assignment of error, it is claimed there was error in the charge as given, and refusing to charge as requested, and in the admission of evidence.

The charge was in writing. It is claimed by the plaintiff in error that the following part of the charge was erroneous:

"This defendant was bound by the law to use such apparatus to prevent the escape of sparks from its locomotives as was then, at the time of this burning, generally used, approved and adopted for that purpose; and if it did so, and then kept the same in proper order and condition, it would not be liable for injury to adjacent premises by the emission of sparks from its locomotives; but otherwise it would be liable for such injury, on the ground of carelessness and negligence in that behalf."

The plaintiff in error requested the court to charge the jury, among other, the following charges, which were refused, and which is alleged as error:

### REQUESTS.

Fourth—Provided the spark-arrester and other appliances to prevent the emission of sparks from locomotive No. 12, or the one going south on the day when said fire upon plaintiff's land had originated, had been carefully and properly inspected before starting on said 22d day of July, 1884, or on the day on which said fire originated, and upon such inspection was found to be in good order and condition, but after starting some defect occurred in the spark-arrester or other appliance to prevent the emission of sparks, without the knowledge of the defendant, whereby the injury complained of occurred, then the company can not be charged with negligence by reason of such defect.

Eleventh—If the plaintiff fails to prove that on the day the plaintiff's premises were burned, the defendant carelessly and negligently omitted to use a spark-protector or arrester, and proper appliances to prevent the emission of sparks from the locomotive that set fire to said plaintiff's premises, then the plaintiff can not recover, notwithstanding the emission of sparks from such locomotive.

Twelfth—Provided the defendant railroad company used a locomotive, say No. 12, well provided with spark-arrester, which experience had proved to be useful and reasonably effective for the prevention of fires, and the same was in good order and condition when it left the shops of the defendant on the morning of the day that the fire was communicated to the plaintiff's fields, and provided that said locomotive was operated by a careful and competent engineer, then if owing to high winds on that day, there was a great draught causing fire to escape from such locomotive, in sparks of sufficient size to communicate fire to the fields of the plaintiff; and also owing to such high wind the fire spread and burned the meadows, pastures and sheep-house of the plaintiff, this would not be negligence on the part of the defendant company, and the plaintiff under such circumstances could not recover.

The plaintiff in error offered the following testimony, which was excluded, and is one of the errors complained of.

### QUESTION AND OFFER TO PROVE.

Q. "Now I will ask you another question: State whether or not you saw fires set along the line of the Cleveland, Columbus, Cincinnati & Indianapolis Railroad when you passed over it in that dry time, as you say you did?"

Objected; objection sustained; exception taken.

Q. "To what extent had these fires burned along the line of The Cleveland, Columbus, Cincinnati & Indianapolis Railroad?"

Objected to; objection sustained; exception taken.

By defendant's counsel: "Your Honor, I expect to show by this witness and I desire that it shall appear in this record, that over the part of The Cleveland, Columbus, Cincinnati & Indianapolis Railroad, over which this witness passed during the dry season, in the months of July and August, in the year 1884, that the country all along the line of that road, was substantially burned up—that is to say that all along the line of that road, the country had been blackened up by burning from sparks that fell from the smoke-stacks of engines that were run on that road during these dry months of 1884; that this road was using the diamond spark-arrester—or the diamond-stack, I should say—and what is called the Smith Patent, the same as the defendant had in use at the same time; that it was as perfect a spark-arrester as was then in use upon any road in the country."

JENNER, J.

Two defenses are set forth in the answer of the company; one a plea in abatement because of the misnomer of the company; the other was an answer to the merits. By answering to the merits, the company entered its appearance, and it was not error to permit the petition and summons to be corrected by inserting the true name of the defendant below. Section 5114, Rev. Stat.; Elliott v. Lawhead, 43 O. S., 171, 172.

The assignments of error as to the charge of the court and the refusal to charge as requested by the railroad company, raise the question as to the degree of care required of a railroad company to prevent the spread of fire from its locomotives. A high degree of care is demanded.

For this purpose it must not only use the best known contrivances in general use for this purpose, but the locomotive, spark-arrester and other contrivances must be kept in good repair, and a failure to take these precautions is such negligence as will render the company liable for the damage which is the result of such negligent acts. But liability will not arise from the mere proof that a fire occurred from sparks emitted from a passing locomotive, and that an invention was in existence, by the use of which the injury might have been prevented. To fix the liability of the company, it must further appear that such invention was in common or general use, so as to have had the approval of experience. Jackson v. Chicago & N. W. Ry. Co., 31 Ia., 176; Field v. The N. Y. Central R. R. Co., 32 N. Y., 339; Shearman & Redfield on Negligence, secs. 332 and 333.

Was the charge of the court in this particular prejudicial to the plaintiff in error? The evidence shows that the spark-arrester known as Smith's patent, was used at the time of the fire on locomotives of this company. The same patent was used on the "Pan Handle," the C., C., C. & I. R. R. and the "Nickel Plate," and to use the language of one of the witnesses, "on all straight stacks." We think the testimony submitted to the jury did show that the spark-arrester in use on locomotive No. 12, was in general use, and was one of the best. But the principal question submitted to the jury was as to the condition of the one on the locomotive at the time of the fire. There was evidence tending to show that it was out of repair.

The language used by the court was as follows: "The defendant was bound by law to have such apparatus to prevent the escape of sparks from its locomotives, as was then, at the time of this burning, generally used, approved and adopted for that purpose." There is no question made in the record but that the Smith patent was so generally used and approved by experience.

There is no error in this part of the charge, as we think.

The fourth request to charge, which was refused, presents the question as to whether the mere inspection of the spark-arrester and other appliances to prevent

the emission of sparks from locomotives, before starting over a line of railroad is all that is demanded of a company, if on such inspection it was found to be in good order and condition; but after starting some defect occurred in the spark-arrester, or other appliances, without the knowledge of the defendant company."

We do not think that the mere inspection of a locomotive, spark-arrester and appliances, by a company, however carefully performed, is sufficient to protect the company from liability. After an inspection and the locomotive is started and passed over ten miles of road, suppose it is then observed to be defective, and out of repair, and fires are being ignited, may the company run that defective locomotive over its entire line and avoid liability because it had no actual knowledge? Or suppose the defect is one that the engineer should have sufficient skill to repair, but neglects to do it, and property of farmers all along the road is consumed by this negligence, is it a sufficient answer to say that the company inspected the locomotive before it was sent out, and it became defective immediately after it started, and without actual knowledge to the company? I think the company is not only required to have its locomotives and appliances in good condition when they are sent out, but it is required to keep them in good condition on all parts of its road. Any other rule would work great damage to the farming community.

The eleventh charge requested and refused, is as follows:

"If the plaintiff fails to prove that on the day the plaintiff's premises were burned, the defendant carelessly and negligently omitted to use a spark-protector or arrester, and proper appliances to prevent the emission of sparks from the locomotive that set fire to said plaintiff's premises, then the plaintiff cannot recover, notwithstanding the emission of sparks from such locomotive."

It is not a difficult matter for the engineer to observe that his locomotive is dropping fire from its fire-box and emitting burning cinders from its stack. The farmer through whose lands it passes, can readily observe the same, and that fires have been started and that his property has been destroyed by the fire that fell from that locomotive. The locomotive and its engineer in a few hours is a hundred miles away from the farmer's burning property, with no opportunity for the farmer to inspect the locomotive and ascertain its defects. It is under the exclusive control of the company and its agents, with the skill and opportunity to remedy the defects or to show that the company has been without negligence. It is an easy matter for the company to do this if it is without fault, but it is almost, if not quite, impossible for the farmer to prove that the particular locomotive that caused his damage was defective in any given particular.

If the plaintiff below was able to establish, by competent evidence, that the fire was caused by coals or sparks dropped or emitted from the locomotive of the company, and that locomotives properly constructed and in good order would not drop coals or emit sparks, we think it then devolved upon the defendant below to establish the fact that its locomotive and all its appliances were properly constructed and in good order.

The court properly refused said charge. Field v. The N. Y. Central R. R. Co., 32 N. Y., 339; Shearman & Redfield on Negligence, secs. 332 and 333; Coale v. H. & St. J. R. R. Co., 60 Mo., 227, sustain us in this conclusion.

The twelfth request to charge was properly refused. A railroad company cannot avoid liability for the destruction of property by fire from its locomotive by showing that it has provided it "with a spark-arrester which experience had proved to be useful and reasonably effective for the preservation of fires." The company must use the best spark-arrester in common or general use; or it must be as good in every respect as those so generally adopted. It is no defense to say it was only reasonably effective for the purpose.

Nor do we think the fact that there was a high wind, by reason of which there was a greater draft causing fire to escape and communicating it thereby to the fields and property of the plaintiff, is any excuse for the company, unless it

further appears that the effect of high wind on locomotives properly constructed and in good order, provided with the best spark-arrester in general use, necessarily causes them to drop ·or emit fire. Kellogg v. The Chicago & N. W. Ry. Co., 26 Wis., 223.

The plaintiff in error offered the testimony of a witness to show that at the time the property was destroyed for which this suit was brought in 1884, The Cleveland, Columbus, Cincinnati & Indianapolis R. R. Co., used the spark-arrester known as Smith's patent, being the same patent used by defendant below, and that all along the line of the C., C., C. & I. Railroad, the country "was substantially burned up," from sparks that fell from the smoke-stacks. This was excluded, and we think properly. The admission of that class of testimony involved an investigation, not only of the kind of spark-arrester in use on the C., C., C. & I. Railroad, but also of the condition of each one used at the time of the alleged fires. This was a collateral matter, in no way proper to be submitted to the jury on the trial below.

Judgment affirmed.

Tyler & Stockwell, for plaintiff in error.

F. Douthitt, for defendant in error.