Henchey, J.
In this action of contract the plaintiff seeks recovery in two counts; in the first, “rent for use and occupation” of the plaintiff’s house and land in West Roxbury for the month of December 15, 1938 to January 15, 1939, and in the second, damages to this house when the water and radiator pipes froze and burst on or about December 31, 1938, releasing a quantity of water which flooded the said house.
The defendant’s answer to both counts was a general denial; however, before the trial, the defendant admitted liability on the first count, and the trial proceeded only on the second count. The trial judge found that the defendant was a tenant at will when he vacated the premises in question and, therefore, not responsible for acts which constituted permissive waste. The case was reported here after the plaintiff claimed to be aggrieved by the trial judge’s rulings and refusal to rule as requested.
*360 The defendant occupied the plaintiff’s house on November 15,. 1937 under a written lease for the term of one year at a monthly rental of $50.00, payable on the fifteenth day of each month in advance. In the lease the defendant agreed to quit and deliver up the premises to the lessor at the end of his term in as good condition, reasonable wear and use thereof, fire and other unavoidable casualties excepted, as the same then were, and to pay the rent during the term and for such further time as the lessee might hold the same, and not make or .suffer any waste thereof.
At the expiration of the year, the defendant continued to remain as a tenant at these premises, though at will as to duration, by agreement with the plaintiff and under the same terms, and he duly paid his rent on November 15, 1938. On December 15, 1938, the defendant gave the plaintiff written notice of his intention to quit on January 15, 1939. There was evidence tending to show that the defendant vacated the premises on December 31, 1938, and that he notified the plaintiff’s real estate agent that he was leaving. The plaintiff testified that she had no personal knowledge of this and did not learn that the defendant had vacated until January 2, 1939, a holiday. Having no key to the house, the plaintiff could not enter the house until the following day when she and the plumber went there and found icicles hanging from the tops of several windows on the ground floor. Inside the house they found that several water and radiator pipes had burst, from freezing the plumber testified, and that water had run down from the second floor, through the ceilings and down the walls, and had accumulated to a depth of several inches on the living room, hall and dining room floors.
The plumber examined the radiators and connecting pipes and also the water pipes and found that they were *361 clogged with ice and had burst in many places from the expansion of the freezing water. The mixing valve for the bathroom shower had split open and water had run from that break causing the subsequent flooding. In his answers to the plaintiff’s interrogatories, read at the trial, the defendant stated that one Brown had closed the main water valve and had drawn the water from the boiler on December 31st. Brown testified that he did not open the petcocks on the radiators and that he was not an expert on hot water heating systems; and that he did not open the mixing valve, nor did he drain the upstairs faucets and the toilets. The plaintiff’s plumber testified that the plaintiff’s is a hot water system and that the radiators would not drain unless the petcocks were opened to allow air to enter the system; that, although the main water valve was closed when he examined it on January 3rd, it was his opinion that there must have been a considerable flow of water from the broken mixing valve at sometime ■before then to have caused so large an accumulation of water on the first floor.
At the appropriate time the plaintiff filed certain requests for rulings, among which were:
“2. On all the evidence the plaintiff is entitled to recover on the second count of the declaration, namely: the defendant occupied the premises of the plaintiff under a written lease for a year, beginning November 15, 1937, and at the termination of his written lease continued to occupy the premises by agreement with the plaintiff as a tenant at will; on or about December 31, 1938, before the end of his term, the defendant vacated the premises without notifying the plaintiff of his intention to do so; the temperature extremes on December 31,1938, were thirty high and eighteen low, and on January 1, 1939, were thirty-four high and twenty-nine low; the defendant, when he vacated, did not shut off the water, drain the *362 water or radiator pipes, nor provide heat for the house; before the plaintiff learned of the defendant’s departure, the radiator and water pipes froze and burst and water from the broken pipes flooded the house, causing great damage. (Denied)
“3. The defendant, having held over after the termination of his written lease, continued to occupy the premises of the plaintiff on the same terms and conditions as those specified in the written lease, there having been no> agreement to the contrary. (Denied)
“4. In every tenancy in the absence of express agreement to the contrary, there is a ‘contract by implication of law that the tenant will use the property in such a manner that no substantial injury will be done it.’ (Denied as this is an incomplete statement of law.)
“5. A landlord may recover from his tenant for damages resulting from the escaping or freezing of water. (Denied)
“•6. The defendant, as tenant at will, was ‘under an implied agreement to use the premises in a tenant like manner and not by his voluntary act unnecessarily to- injure them. ’ (Allowed)
“7. The defendant is liable to his landlord for his ‘abuse, mismanagement, or omission of duty touching real estate, while rightfully in possession, which results in substantial injury.’ ” (Denied as inapplicable to the facts found.)
There was no error in the finding and ruling that after the expiration of the written lease the defendant became a tenant at will. Mere holding over by a tenant after the expiration of a written lease, even where the lease contains a stipulation as to the payment of rent beyond the term, will create only a tenancy at sufferance. Benton vs. Williams, 202 Mass. 198. However, in such a case, if an agreement is expressed or is fairly inferable from all the circumstances, then a tenancy at will is created. Continued occupation by the tenant with the landlord’s knowledge and consent and *363 payment and receipt of the same rent on the regular rent day is sufficient to establish a tenancy at will. Benton vs. Williams, supra; Bennett v. Nesson, 244 Mass. 299; Moskow vs. Robinson, 276 Mass. 16; Ames vs. Beal, 284 Mass. 56. Such was the situation in the instant case.
What then are the liabilities of a tenant at will? At common law a tenant for life or for years or at will was not liable for waste. Later by the Statute of Marlebridge, tenants for life or for years were made liable for waste, but not a tenant at will. The question of the liability of a tenant at will for waste was decided early in this Commonwealth, after a thorough review of the English decisions and the decisions of other states in the United States. It was held in Lothrop vs. Thayer, 138 Mass. 466, that a tenant at will was liable for voluntary waste, but not for permissive waste. Later decisions have confirmed this ruling. Chalmers vs. Smith, 152 Mass. 561; Means vs. Cotton, 225 Mass. 313 at 319.
It is not contended that the damage done in the instant case was done wilfully. At best it was accomplished through the defendant’s negligence and constituted permissive waste.
, The only question which remains is whether or not the rule of no liability on the part of a tenant at will for permissive waste should apply where the tenancy at will is created as a result of a holdover from a tenancy for years, which tenancy was established by a written lease which provided that the tenant should not “make or suffer any waste thereof.” We see no reason for changing the rule in such a case. To be sure the tenancy at will is upon the same terms as the original tenancy. Dimock vs. Birgen, 12 Allen 551; Weston vs. Weston, 102 Mass. 514 at 518; Walker Ice Co. vs. American Steel and Wire Co., 185 Mass. 463; Boudreau vs. Johnson, 241 Mass. 12 at 16. However, *364 all the conditions of the original lease do not apply. For example the tenant would not be entitled to remain in possession for an additional year, but rather he could be evicted after proper notice at any time. If the landlord wishes to protect himself from the negligence of a tenant at will holding over after the expiration of a written lease, he can take a renewal of the lease with proper covenants, just as he should to protect himself from a mere tenant at will. Cf. Lothrop vs. Thayer, 138 Mass. 466.
The rulings of the trial judge indicate that he was aware of the distinction between wilful and permissive waste. We see no error in his rulings and refusals to rule as requested.
The report is dismissed.