*Municipal Court of the
City of Boston*

No. 150462

## ELEANOR T. DE ROCHE

### v.

## COMMONWEALTH DAIRY STORES, INC.

Argued: June 20, 1969  Decided: June 26, 1969

*Present*: Adlow, C.J. Canavan, Gorrasi, J.J.
Case tried to *Lewiton, J.,* in the Municipal
Court of the City of Boston No. 150462.

*Adlow, C.J.* Action of contract and tort to
recover for waste. There was evidence that be-
tween May 1959 and March 1, 1966 the defen-

dant conducted a retail store for the sale of dairy products in a building located at 141 Massachusetts Avenue in the town of Arlington. From May 1959 to June 1, 1965 the defendant occupied these premises as a tenant at will. From June 1, 1965 to March 1, 1966 the defendant occupied under a lease which contained a covenant against waste. Between the date when the defendant's occupancy commenced in 1959 and July 28, 1965, the owners of the premises were Henry T. DeRoche and Winifred M. DeRoche. On July 28, 1965 the property was transferred by the owners to Eleanor T. DeRoche on which occasion the lease executed on May 12, 1965 (effective June 1, 1965) was assigned to Eleanor T. DeRoche. Said assignment included "all debts, demands, actions, causes of actions, suits, accounts, covenants which the said sellers now have...". The defendant's occupancy was terminated on March 1, 1966. On March 2, 1966 the plaintiff brought the writ in this action.

There was evidence that at the time of the commencement of the defendant's tenancy in 1959 the premises were in sound and safe condition; that the flooring and walls of the store were in good repair; that during the period of the occupancy there was noticeable dampness on the floors, and in the fall of 1965 one who had occasion to visit the cellar under the store observed water dripping into the cellar through the ceiling from the floor above; that in many

places the plaster from the ceiling had fallen, while in other places it was hanging down; that water was trickling down the walls of the basement from the floor above. This witness who was an expert carpenter, and had examined the premises at the request of the plaintiff, testified that in his opinion the process of deterioration which he witnessed was the consequence of a condition that had existed over a period of two or three years prior to the time he made the observation.

The plaintiff testified that she visited the premises a few hours after the defendant had vacated the place. She stated that as she walked across the area where the ice boxes and show cases had been located, and had just been removed, the floor gave way under her and collapsed.

There was evidence that to restore the premises to the condition in which they were at the time of the original occupation by the defendant required a complete replacement of the beams, joists, and sills supporting the floor, a new ceiling in the basement, as well as a complete replacement of the plumbing. Much of this evidence was disputed by the defendant.

At the close of the evidence the defendant filed a multitude of requests for rulings, many of which were granted by the court. The court refused to rule as requested by the defendant that the evidence did not warrant a finding for the plaintiff on the counts for waste. In addition,

the defendant asked the court to rule that the assignment noted in the lease was invalid, and that the action was barred by the statute of limitations. Both of these requests were likewise denied. Being aggrieved by the refusal to rule as requested and by the finding for the plaintiff, the defendant brings this report.

█. There was no error. In considering the sufficiency of the evidence to support a finding for the plaintiff on the ground of waste we must keep in mind the nature of the obligation assumed by the tenant occupying the premises. While there is considerable evidence to the effect that the process of rotting of timbers had been going on for a period of two or three years prior to the execution of the lease, there is ample evidence to indicate that the process continued during the period when the defendant occupied as a lessee. As for this period the obligation of the lessee to answer for waste renders him liable for damage caused to the premises whether such damage is caused by mere negligence or by conduct that is voluntary. *Lothrop* v. *Thayer,* 138 Mass. 466. *Cawley* v. *Northern Waste Co.,* 239 Mass. 540 (Premises damaged by fire caused by negligence, constitutes waste).

█. As for the period during which the defendant occupied as a tenant at will the liability of the tenant for waste would be limited to waste that is voluntary. It would not be liable for waste that is the consequence of mere negligence where the damage arises from an omission to

properly safeguard premises. *Chalmers* v. *Smith,* 152 Mass. 56. *Means* v. *Cotton,* 225 Mass. 313, 319.

██ Voluntary waste has been defined as damage caused by "the voluntary improper or unreasonable use of the premises" by the occupant. *Gade* v. *National Creamery Co.,* 324 Mass. 515; 10 ALR 2d 1006. Keeping in mind that a continuing process of deterioration embraced both the tenancy at will and the period of occupancy under a lease, we may assume that the court based its findings for the plaintiff on the ground that the damage for which the plaintiff seeks compensation was the consequence of voluntary waste.

██ There was ample evidence to support such a finding. This evidence warranted a finding that the water which dripped through the floor damaged the ceiling and saturated the timbers and sills on which the floor rested. As a consequence the floor collapsed as soon as the ice boxes and show cases were removed from the premises. These facts warranted the inference that the defendant had installed improper equipment which resulted in damage. The damage was not the consequence of an oversight or omission. It was rather the result of the installation of improper and unsuitable equipment which the defendant had ample opportunity to discover and to correct.

It is unnecessary to consider the consequences of the change of the defendant's occupancy in

June 1965 from a tenancy at will to a leasehold. At the time this change took place the major portion of the damage had been done. Just how much more was added during the eight months that the leasehold ran cannot be estimated. However, it is immaterial. The tenant at will and the tenant under the lease were one and the same, a circumstance that simplifies the issue. Had no lease been executed the obligation of the tenant to answer in damages would have been the same for simple reason that there is ample evidence in this report to support a finding of voluntary waste. We see nothing to distinguish the facts in this cause from those in *Gade* v. *National Creamery Co.*, 324 Mass. 515. (Tenant at will liable for overloading floor causing it to collapse).

The defense based on the Statute of Limitations is without merit. At what time a cause of action accrues where a claim is based on waste is a matter of doubt in this Commonwealth. *Padelford* v. *Padelford,* 7 Pick. 152. In analogous situations involving damage resulting from excavation it has been held that the Statute of Limitations does not run from the time of excavating but from the time of the cave in. *Backhouse* v. *Bonomi,* 9 H.L. Cas (Engr.) 503. See also *Smith* v. *Seattle,* 18 Wash. Rep. 484. On the reported facts the plaintiff did not become aware of the damage resulting from the defendant's misuse of the premises until the ice boxes and show cases were removed and the

floor caved in. In our opinion it was only then that the cause of action accrued. *Wells* v. *New Haven & Northampton Co.*, 151 Mass. 46.

The defendant's challenge to the validity of the assignment is without merit. As the assignee of a non-negotiable chose in action which has been assigned in writing, the plaintiff may maintain an action in her own name. G.L. c. 231, § 5. *Report dismissed.*

EDWARD M. VIOLA
   of Cambridge for the Plaintiff.
MAX MARKS
   of Boston for the Defendant.